# JOHN v. STATE.

CRIMES —CRIMINAL LAW — KIDNAPPING — STATUTORY CONSTRUCTION—PARENT AND CHILD.

1. It is no defense to a charge of kidnapping a young child that the latter did not object, or did consent, such fact standing alone.

2. A child of tender years — in the case at bar a girl eleven years old — would be held incapable, in law, of giving such consent as would render lawful an act carrying her from her place of residence, committed by one not entitled to her custody; and especially if such act was against the will and over the objection of her lawful custodian.

3. The crime of kidnapping, as defined by statute is not committed if the person taken away, being capable in law of consenting, goes voluntarily, without objection, in the absence of fraud or deception.

4. The removal must be against the will of the party injured; but if the party has been decoyed away, fraudulently, the consent having been obtained by deception, the law will regard such consent as a nullity, and the act will be treated as against the will of the person thus decoyed away.

5.   The gravamen of the crime of kidnapping is the carrying away of a person from his place of residence. It need not be out of the State or county. It need not be for any particular length of time. The crime is committed, if at all, as soon as the person is carried away from his place of residence forcibly or fraudulently.

6.   The motive or purpose, evil though it may be, does not render an act a crime which in itself is not one. A crime may, however, be aggravated by the motive, and the latter may affect the punishment.

7.   A father, whose divorced wife has the care and lawful custody of his and her child — a girl eleven years old — does not commit the crime of kidnapping by taking said child away from her place of residence and out of the State by and with the knowledge and consent of the said mother and legal custodian; although the purpose of said taking away is to prevent the child's appearance as a witness, in obedience to a subpœna, in a public prosecution before a magistrate, and although the child is kept away until after the date fixed for her appearance as such witness, and although when taken away, the child's hair is cut, she is disguised in boy's attire and directed to assume a fictitious boy's name.

8.   In the contemplation of the statute defining kidnapping the taking of a child away by a parent, or with the parent's consent, would be in pursuance of law if it is not prohibited by law.

[Decided March 3, 1896.   Information filed in District Court, September 16, 1895.]

ERROR to the District Court for the County of Sweetwater. HON. RICHARD H. SCOTT, Judge of First Judicial District, presiding.

William E. John was convicted of the crime of kidnapping, and prosecuted error. The material facts are stated in the opinion.

*Wm. Newton and Mail & Chiles*, for the plaintiff in error.

It is the province of the judge to determine the admissibility of confessions (Whar. Cr. Ev., 689; 1 Greenl.

Ev., 219; 3 Am. & Eng. Ency. L., 464; Com. v. Preece, 140 Mass., 276; Proffatt on Jur. Tr.). Unless voluntary they should be excluded. (Com. v. Preece, supra; Williams v. State, 72 Miss., 117; 3 Am. & Eng. Ency. L., 449; People v. Wolcott, 51 Mich., 612.) The motive which actuated the plaintiff in error can not affect the question of his guilt. It was therefore error to admit the records of the magistrate showing the fact that the child had been subpœnaed as a witness. (State v. Farrar, 41 N. H., 53; Eberling v. State, 136 Ind., 117.) Where the statute of another State is adopted, the judicial construction which obtains in that State is also adopted. (Chisholm v. Weisse (Okl.), 39 Pac., 467; Coffield v. State, 44 Neb., 417; 23 Am. & Eng. Ency. L., 433.) Our statute was taken from Indiana, and has been construed by the supreme court of that State in the following cases: State v. Sutton, 116 Ind., 527; State v. Kimmerling, 124 id., 382; Boes v. State, 125 id., 205; Eberling v. State, 136 id., 117. Under the statute, there can be a forcible carrying off, or a fraudulent decoying, but not a fraudulent carrying off. It is reversible error to instruct the jury on issues not raised by the pleadings (2 Thompson on Tr., 2313; Jenkins v. State (Tex.), 27 S. W., 1078). Instructions should not be so drawn as to direct the attention of the jury to prominent features in the testimony on one side, while sinking out of view or passing lightly over portions on the other side which deserve equal attention. (2 Thomp. Tr., 2330; Proffatt on Jur. Tr., 319; 11 Am. & Eng. Ency. L., 253.) Proof of fraud will not be sufficient to convict unless relied on to the exclusion of every other motive for the act. (2 Bish. New Cr. L., 1122; Clark's Cr. L., 188.) The consent of the mother to the taking away of the child was a complete defense. She was the legal custodian of the child; and her will stood in place of the will of the child. (Hunt v. Hunt, 94 Ga., 257; Com. v. Nickerson, 5 Allen, 19; State v. Farrar, 41 N. H., 53; Bish. Direct. & Forms., 570.) The taking was in pursuance of law if by authority of law.

*Benjamin F. Fowler*, Attorney-General, for the State.

The presumption is that a plea of guilty is a voluntary plea. (Cleveland v. Gohrs, 13 S. C., 397.) It is a solemn admission of every fact necessary to be proved to sustain the charge. (2 Russ. on Cr., 824.) The record of the preliminary examination containing a confession of guilt by a plea of guilty was rightly admitted in evidence. (2 Russ. on Cr., 824; Whart. Cr. L., 683; Com. v. Ayers, 115 Mass., 137.) Such a plea is not looked on with suspicion. (State v. Bowe, 61 Me., 175.) The fact that the officer had advised him to confess is not sufficient to exclude the plea. The confession to the officer was not offered. (U. S. v. Nordello, 4 Mackey, 503; People v. Smith, 3 How. Pr., 226; Hawkins v. State, 7 Mo., 190; Fonts v. State, 8 O. St., 98; 63 Ga., 600; 3 Am. & Eng. Ency. L., 464.) It is a well-settled presumption that a child intends to obey the laws of the State, & that any violation of law which a child commits through the influence of a more mature person, is done against the will of the child. Therefore, when John took the child away with him in violation of the laws of the State, he took her against her will, because her natural intention would be to obey the subpœna. The evidence touching the subpœna was therefore proper. There is no parental authority independent of the supreme power of the State. The public has a paramount interest in the virtue and knowledge of its members (Mercein v. People, 25 Wend., 64). The right of parental control is a natural, but not an inalienable, one. (Ex parte Crouse, 4 Whart. (Pa.), 9; Miner v. Miner, 2 Ill., 43; in re Stockman, 71 Mich., 180; Cowls v. Cowls, 2 Gilm., 435; Stripling v. Ware, 36 Ala., 87.) The natural right which parents have in children does not extend to the right to commit unlawful acts either upon the person or will of the child. (Com. v. Goodhue, 2 Metc., 193; State v. Lawrence, 19 Neb., 309; Bergen v. People, 17 Ill., 425.) A father who has the custody of a child can not take it out of the jurisdiction of the court under objections. (9 Paige, 233; 5 id., 595.)

The mother had no authority to consent to the taking away of the child to avoid the subpœna. Therefore the consent is no defense. (Johnson v. State, 2 Humph., 283; Anderson v. State, 3 Head., 455; Fletcher v. People, 52 Ill., 395; Reg. v. Hopley, 2 F. & M. (Cockburn), 202.)

Potter, Justice.

William E. John, the plaintiff in error, was charged by information with unlawfully and feloniously, forcibly and fraudulently carrying away from her place of residence one Jennie John, her place of residence then and there being in the town of Rock Springs, in the county of Sweetwater, and it was alleged that the same was not done in pursuance of the laws of the State of Wyoming, nor in pursuance of the laws of the United States. A plea of not guilty was entered, and upon trial the plaintiff in error was convicted and sentenced to imprisonment in the penitentiary for the term of five years.

Several errors are assigned, among them being the admission in evidence of the record and proceedings of a justice of the peace at Rock Springs showing the pendency and disposition of a criminal prosecution upon preliminary examination, wherein one Thomas Sutton was charged with criminal assault upon the said Jennie John, and the latter had been subpœnaed as a witness; also the admission in evidence of the plea of guilty entered by the plaintiff in error, before the committing magistrate upon his preliminary examination; and the conduct of the trial judge, by which it is urged the judge exhibited to the jury his own opinion of the parties litigant, and the merits of the case.

The principal contention, however, arises upon the rulings of the court, and instructions respecting the effect of the consent of the mother of the child to her removal.

Briefly, the main facts in the case are, that Thomas Sutton, who was the stepfather of Jennie John, he having married the mother after her divorce from the plaintiff in error, was charged with a criminal assault upon the

girl, and proceedings before an examining magistrate were pending at the time the plaintiff in error committed the act complained of. At that time also, the girl had been subpœnaed as a witness in such proceedings, had appeared once, and upon the examination being continued to a subsequent day, was, with the other witnesses, ordered to appear at the adjourned hearing. This order does not appear upon the record of the magistrate, but he testified that he did, in fact, order the witnesses who had been subpœnaed, so to appear. · Prior to the day to which proceedings in the Sutton matter had been continued, William E. John, the father of Jennie John, came to Rock Springs from Cheyenne, where he had been residing, and with the full consent, connivance, and assistance of Mrs. Sutton, the mother of the girl, and with whom the latter was living, and in whose custody she lawfully was, cut the girl's hair short, dressed her in boy's clothes, and took her with him upon a freight train, afterward at some place along the road, changing to a passenger train, and by that means of travel carried the child with him to Denver, in the State of Colorado. After getting upon the train, the father instructed the child to assume the name of Willie Evans. The girl herself did not offer any opposition to going with her father, or protest against it in any way, but testified upon the trial that she was willing, and wanted to go with him; that she expected to be gone about a week; that she was told she would be given a ride upon the train, and she wanted such a ride, that she loved her father as well as her mother, and would do anything her father told her to do. It seems reasonably clear from the testimony, as well as entirely natural for one of her years, that parental authority would be and was sufficient to cause her to go with the plaintiff in error,⁻ especially as she was aware that her mother not only did not object, but consented to it. It further appears from what was said by both the father and mother that it was intended to keep her away until after the day set for the adjourned hearing in the Sutton case; and the conclusion

is irresistible that both the father and the mother were acting in the matter to prevent the presence of the child as a witness at the examination in that case.    Whether it becomes at all material or not it may be suggested that within a few days, but after such day set for the hearing of the case against Sutton, the plaintiff in error and the girl were found in Denver, and both of them were brought back to Rock Springs by an officer of Sweetwater County, the father upon a requisition, a complaint for kidnapping and child stealing having been preferred against him. The mother, also, seems to have been on the same train as officer and prisoner, and with the child upon the return to Rock Springs.    Subsequently the original complaint against Sutton was dismissed, and another was filed, upon the hearing of which before the examining magistrate, the prosecution announced that they had no evidence to offer; and thereupon Sutton was discharged.    The failure to offer proof on the part of the prosecution at the last hearing does not seem to have been caused by the absence of Jennie John, at least it does not appear that, if she were then absent or her presence could not be obtained, the plaintiff in error or Mrs. Sutton were in any way responsible therefor.

The facts thus outlined are sufficient, and perhaps more than are required, upon which to consider the principal question arising in the case.    It is urged on behalf of the plaintiff in error that having the consent of the mother and the lawful custodian as well as natural guardian of the child, he was not guilty of the crime of kidnapping under the statute.    On the other hand the attorney-general earnestly contends that the child was subject to a lawful subpœna to attend a public prosecution as a witness on the part of the State; that for her to wilfully refuse to obey the same, or absent herself was unlawful, and if any other person caused such disobedience of the process of the court it was an offense against the laws of the State, and the mother, in view of such unlawful results, was not permitted or authorized to

consent to the child being taken away, and therefore such a consent was a nullity; that it must be conclusively presumed that the child intended and desired to obey the laws, and answer the subpœna and orders of the justice of the peace. It was conceded upon argument, that had it not been for the fact that Jennie John had been subpœnaed as a witness and had been subject to the process and orders of the magistrate in the Sutton case, the taking, even under all the other attending circumstances, would not have constituted the crime of kidnapping. We think such a concession was not a rash one. Mrs. Sutton having the lawful custody of the child, who was of tender years, such custody having been awarded to her in the divorce suit, consenting that the father could take her to Colorado, although in preparing for the journey the girl's hair was cut, and she was clothed in boy's apparel, and taught or instructed to assume a boy's name, nothing else appearing, the crime of kidnapping would not have been committed. For unnatural or inhuman parental abuses of a child, or criminal or unnatural neglect or treatment, the law furnishes redress, and provides means for punishing the parental offender. The legislature of this State has made quite ample provision for the protection of the morals, the good government, education, and proper treatment of children, and courts will not be dilatory in the enforcement of such laws, or in punishing a violation thereof when properly brought to their attention.

There were two counts contained in the information in this case. The second count charged the accused with what is denominated "child stealing," alleging that he did take, decoy, and entice away said Jennie John, with the intent to detain and conceal her from one Mary Sutton, her mother. During the trial, upon a motion of the defendant, to compel an election between the two counts, which was granted, the prosecution elected to proceed upon the first count. That count charged kidnapping, under Section 25, Sess. Laws 1890. The statute defining and punishing such offense is as follows: "Whoever kid-

naps, or forcibly or fraudulently carries off or decoys from his place of residence, or arrests or imprisons any person, with the intention of having such person carried away from his place of residence, unless it be in pursuance of the laws of this State, or of the United States, is guilty of kidnapping, and shall be imprisoned in the penitentiary not more. than fourteen years." This statute was, it is said, taken from the statutes of Indiana; at any rate it is the same as the statute of that State covering the same offense: and in that State it has received judicial construction in some respects, but not upon any state of facts similar to those disclosed in the case at bar. In that State, however, it has been held, and, we think, with excellent reason, that there are two branches or subdivisions in the section; that, to constitute a crime under the first subdivision there must be a carrying, or decoying of the person against whom the wrong is committed, away from his place of residence, forcibly or fraudulently, and that the words "with the intention of having such person carried away from his place of residence" constitute a part of the crime defined in the second subdivision only; that such an intention is necessarily involved in the crime as defined in the first subdivision. Boes v. State, 125 Ind., 205; State v. Kimberling, 124 Ind., 382; State v. Sutton, 116 Ind., 527; Eberling v. State, 136 Ind., 117.

In the case of Eberling v. State, supra, the accused was charged with kidnapping a young woman of eighteen years of age. It appears that she went away with him voluntarily, having met him by previous appointment to take a buggy ride. The court say that it could not be contended upon the facts, with any show of reason, that the young woman was forcibly carried away, or that she was arrested or imprisoned with the intention of having her carried away from her place of residence; and, proceeding to discuss that part of the statute which makes it a crime to decoy one away from his place of residence, the court say: "Of course there could be no such thing

as forcibly decoying a person from his place of residence, because the word decoy means to entice, tempt, lure, or, allure. To constitute the offense of kidnapping under this provision of the statute, it is necessary that the injured party should be fraudulently decoyed from his place of residence. Ordinarily, there can be no such fraud without deception." In that case, although the accused was said to be guilty of conduct which richly merited the condemnation of all good people, it was held that such conduct did not amount to kidnapping. At common law kidnapping was said to be false imprisonment aggravated by carrying the imprisoned person to some other place. 2 Bishop's Crim. Law, Sec. 750; Clark's Crim. Law, p. 220. Cases have been cited where a father or other person has been convicted of kidnapping, who has carried away a child of tender years, without the consent of the mother, or parent having its care and custody, although the child offered no objection, protest, or resistance. No question can arise, but that such convictions were proper. It should be, and is, no defense in a charge of kidnapping a young child, that the latter did not object, or did consent, such fact standing alone; and we would be inclined to hold in this case that the mere consent of Jennie John, a child eleven years old, would not exculpate the accused. We incline to the opinion that she is incapable, in law, of giving such consent as would render lawful an act carrying her from her place of residence, committed by one not entitled to her custody, and especially if such act was against the will and over the objection of her lawful custodian, the one whom the law or the court has entrusted with her care and control.

In the case of the State v. Rollins, 8 N. H., 550, the facts were that the overseers of the poor had placed a mulatto boy, about six years of age, and one of the paupers of the town of Exeter, with the defendant, who resided in Sanbornton, as an apprentice; and the defendant had agreed in writing to have and hold him by an indenture to be made by the overseers in case he should

use the boy well; and that he would clear the town from all expense that might accrue, by not returning the boy to the poorhouse within one year.   No indenture, however, had been executed.   Not quite two years later the defendant carried the boy from his house to the house of another person in another town forty miles distant, and left him there, stating that he had sold him to a person residing in Alabama until he should be twenty-one years old. Before the person to whom such sale was to be made had received the boy, he was discovered by the overseers of the poor of Exeter and taken away by them.   It was held, that the boy was not of an age to consent; and that as the defendant held him as an apprentice, and might lawfully exercise authority over him as such, he had no right to transfer him or his services to a third person, and especially with a view to his being carried out of the State; and when he did so, it became a restraint upon the liberty of the boy and false imprisonment.

It is clear that in the case just adverted to, the primary right of custody of the boy was in the overseers of the poor, representing the town, as he was a pauper of the town, and evidently without parents, or abandoned by them; that the defendant Rollins had been invested with but a limited authority over the person of the child, and when he transported him in violation of the purpose for which he had him in charge, he exceeded his authority. The boy could not lawfully consent, and the overseers of the poor had not consented to such disposition, and the act of the defendant clearly amounted to kidnapping.

In State v. Farrar, 41 N. H., 53, a child of tender years was lawfully under the care and in the custody of its mother, such custody having been awarded to the mother by decree of court.   The father by force, without the mother's consent, took the child away and carried her into the State of Maine.   He was convicted, and the verdict was sustained.   The court say in the course of the opinion: "In the case of children of that age, when they are in the place of their lawful custody, they are

deemed to be free, but when taken away against the will of their rightful guardians, they are justly regarded as under illegal restraint." It was also held in that case that the child was incapable of consent to the seizure, and removal, and that being taken from its lawful custody, it must be deemed to have been taken without its consent as matter of law.

It will hardly be contended that the crime of kidnapping, as defined by the statutes of this State, is committed, if the person taken away, being capable in law of consenting, goes voluntarily, without objection, in the absence of fraud or deception. The removal must be against the will of the party claimed to be injured; but if the party has been decoyed away fraudulently, the consent having been obtained by deception, the law will regard such consent as a nullity, and the act will be treated as against the will of the person thus decoyed away

In the case at bar, the consent of the mother, with full knowledge of the purposes and motives of the plaintiff in error, seems to have been conceded. The court instructed the jury as follows :

" You are instructed that the consent of Mrs. Mary Sutton to the taking of said Jennie John, if you believe from the evidence such consent was given, is no defense unless the carrying away was done in pursuance of the laws of this State, or in pursuance of laws of the United States." To the giving of this instruction the defendant John excepted.

It is clear that if a parent is not prohibited by law from taking his child away, then it is done in contemplation of the statute, in pursuance of law, and if Mrs. Sutton had the right to consent to such taking, or such consent on her part or any taking away by her of the child was not prohibited by law, then such consent and such taking away by her, or with her consent, would be done in pursuance of law. The instruction referred to, therefore, is somewhat misleading, although possibly technically correct; for it may be true that such consent would be no defense if

the carrying away was not done in pursuance of the laws of this State or of the United States. The court did not instruct them that such consent would render the act done, within or in pursuance of law, or indeed that it was not, in any express terms, although it was doubtless the purpose of the instruction to negative such idea. The court, however, refused, upon request of defendant on trial, to give an instruction to the effect that in the carrying away of a person of tender years with the full knowledge and consent of his or her lawful guardian and custodian, the act is done in pursuance of law. to which refusal an exception was duly taken.

Regarding the crime with which plaintiff in error is charged in this case, it must be borne in mind that the gravamen of such crime is the carrying away of a person from his place of residence. It need not be out of the State or even out of the county. It need not be for any particular length of time. The crime is committed, if at all, as soon as the person is carried away from his place of residence forcibly, or fraudulently. It matters not whether the culprit intends to detain his victim a few hours, or a few days, or permanently. It is the act of carrying away, when done with force or by fraud, or following the statute more closely, as the result of force or a decoying, that constitutes the crime. The act must be unlawful in and of itself. If the act is lawful, it matters not how evil or depraved the motive; the law does not punish bad motives alone. If the act is unlawful, the motive, however good, is of very little consequence in determining culpability. A man steals bread to feed his hungry children; his motives are not bad, but the law, nevertheless, has been violated. The motive or purpose, evil though it may be, does not render the act a crime, which in itself is not one. Clark's Crim. Law, p. 41. A crime may, however, be aggravated by the motive. and the latter may affect the punishment.

The existence of the subpœna, and the duty of obeying the same, and the knowledge of John thereof, serves only

to show that the motive and the purpose of the accused
was to secrete the girl from the officers, and prevent her
presence at court; this motive and purpose were not com-
mendable, having regard to the inflexibility of the laws,
and their due and proper observance; the methods em-
ployed to disguise the child and avoid successful pursuit
and discovery were far from meritorious, but in this prose-
cution the motives, purposes, and methods of disguise are
not alone upon trial. Eliminate such motive and purpose,
as well as the care taken to disarm the public and elude
the officers, and the remaining acts must, after all, deter-
mine the character and quality of the offense of plaintiff
in error, as respects the present complaint. The child
was carried away, forcibly perhaps, regarding her age, so
far as she alone was concerned, but without force or
fraud, or any manner of deception, when we substitute
for the will of the child that of her mother and lawful
custodian. Mother and child both consenting, the former
with full knowledge, the going away was voluntary. The
child was not in the custody of the law or of any of its
courts or officers. Neither the court issuing the process
of subpœna, nor the official making service thereof, pos-
sessed thereby any authority in the meantime to control
the actions of the witness, or interfere with her entire and
absolute freedom of movement and travel. Had she
arrived at mature years, of her own accord, she could
have left her place of residence without lawful interrup-
tion, subject alone to any penalties which the law might
authorize to be imposed if she should have failed to pre-
sent herself at the appointed time and place. She was,
however, a mere child, and her mother, the one lawfully
caring for her, possessed the same freedom with regard
to her offspring, which the latter, if older, would had have
the right to exercise, so far as the mandates and effect of
the subpœna were concerned. Whatever she could law-
fully do, she could lawfully consent to be done by another.
Very true it is, that the authority of a parent is not
unlimited, and that for an abuse thereof he may be pun-

ished, and that the state represented through its judiciary, having due regard for the best interests of children, may even, in proper cases, deprive a parent of the care of his own child, and that such action is occasionally taken, but until that occurs, the parent retains the right of such custody and control. In the case at bar, Jennie John was kidnapped, if at all, and the statute upon which the information is predicated, was violated, if at all, as soon as she had been taken away from her place of residence. Much violence would be done to that statute, and its effect largely destroyed, if indeed its purpose would not be almost entirely annihilated, by holding that the crime depends upon the distance to which the injured person is transported, or the period he or she is detained. Great wrong to the individual might be, and generally is, by the commission of such crime, accomplished very soon after the initial steps of the removal, if any offense other than the forcible removal is intended. The carrying away itself has therefore very wisely been declared a heinous offense. Had she been returned within a few hours, or the next day, the offender would nevertheless have been amenable to the statute; the crime of kidnapping would have been complete; and yet, in such an event, the disobedience of the subpœna would not have resulted from the act of removal    It can hardly be possible that this is correct, and we think its soundness can not be questioned, and that, nevertheless, for the reason that the child is taken out of the State and detained several days, the very same act which before or when it occurred was not kidnapping has become such; that the effect of the act upon a public prosecution has from that consideration alone determined the crime to be that of kidnapping.

If John was guilty of the crime charged in this case, then Mrs. Sutton, the mother, was equally guilty of the same crime, she having consented, aided, and abetted him. We are not prepared to assent to the idea that because Jennie John was desired and had been summoned as a witness, her mother became charged with the duty

of preventing her departure from home until the require-
ments of the court's process had been fully satisfied, to
such an extent that a crime entirely independent of any
disobedience of the process, would be perpetrated by a
wilful neglect or violation of that duty alone; and that
by allowing the child so to depart with another, she has
been guilty of kidnapping. The act, in the absence of
the process of subpœna, would have been lawful, and we
fail to observe any logic in the argument that the child
has been kidnapped, merely because she was under a
legal obligation to respond at some future time as a wit-
ness, and the mother and father were aware of that fact,
and desired to avoid it. The legislature has made pro-
vision for the punishment of offenders who obstruct or
impede the administration of justice, or who by force,
threats, or threatening letters endeavor to influence,
intimidate, or impede any witness in the discharge of his
duty, and the penalty for such an offense is a fine or
imprisonment in the county jail not to exceed sixty days;
and a witness who refuses to obey a subpœna served
upon him, may be punished by a fine not to exceed five
hundred dollars to which may be added imprisonment in
the county jail for a period not longer than ninety days.
(Chap. 73 Laws 1890, Secs. 121 and 122). To obstruct
the execution of legal process, or to forcibly liberate any
person from legal arrest knowingly, is but a misdemeanor.
(Chap. 73 Laws 1890, Sec. 120.) To assist a person to
escape from jail where he is lawfully confined is likewise
but a misdemeanor, authorizing a fine of not more than
five hundred dollars and imprisonment in the county jail
not to exceed one year. Notwithstanding all this, we
are asked to hold that, if the consequence of taking a
child from her place of residence with the consent of her
lawful guardian and custodian, which would not other-
wise offend against the statute under consideration, is the
obstruction of justice, or the disobedience of a subpœna,
the purpose and motive of the act being that such result
may ensue, the offender may be convicted of such an

offense by reason alone of such consequence and such motive, as will subject him to imprisonment in the penitentiary for possibly fourteen years. We do not so understand the law, and are unable to so construe the criminal statutes. The plaintiff in error, and his former wife, may have been extremely derelict in the observance of their parental obligations, the conduct of this man may have been and doubtless was highly disgraceful, and reprehensible; it is possible that he is accountable therefor under some criminal statute, and merits punishment, but the conclusion we are inclined to consider quite clear that by the act complained of he did not commit the crime of kidnapping, assuming the facts to be as we understand them from the record in this case with respect to the conduct of. mother and child; and that the instructions given regarding that matter were misleading and erroneous. With more particular reference to the proposition that Mrs. Sutton could not consent to an unlawful act; viz., the avoidance of the mandates of the process of subpœna, we will only add, that while that is unquestionably correct, its application to this case is of no avail. Her consent to the act of plaintiff in error, in taking the child away, within the contemplation of the crime of kidnapping, did not necessarily imply or involve an assent to the unlawful consequence which receives so much attention and to which is attributed so much importance by counsel ; neither were such unlawful consequences the natural or necessary result of the act of carrying away which is the essential element of kidnapping. Had the criminal complaint in this case been the obstruction of justice, impeding a witness, or aiding a witness to avoid or disobey a subpœna or other process of the court, the consent of the mother could not have tended to exculpate the defendant, and would have been no defense. The principle contended for would, in such a case, have been applicable.

It therefore follows that the judgment must be reversed, which is ordered, and the case will be remanded with

directions to the district court to vacate the verdict and grant a new trial.

*Reversed.*

GROESBECK, C. J., and CONAWAY, J., concur.