Richard Norman ROJEM, Jr.,
Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–485.

Court of Criminal Appeals of Oklahoma.

March 16, 1988.

Rehearing Denied May 16, 1988.

Mark Barrett, Sp. Counsel, Appellate Public Defender's Office, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Richard Norman Rojem, Jr., was convicted in Washita County District Court, Case No. CRF–84–35, of Kidnapping, Rape in the First Degree, and Murder in the First Degree. He received sentences of one thousand (1,000) years each for the kidnapping and rape convictions, and he received the death penalty for the murder conviction.

The evidence presented at trial was that sometime between 10:00 p.m. on the evening of July 6, and 1:15 a.m. the morning of July 7, 1984, seven-year-old Layla Cummings was abducted from the apartment where she lived with her mother and brother. The mother was at work when notified by the individual who was watching the Cunningham apartment from across the street that Layla was gone from the apartment. Layla's body was found in a plowed field later the morning of July 7, by a Burns Flat farmer. The farmer saw the body as he went to feed cattle, and came no closer than ten feet.

The medical examiner testified that Layla died from two large stab wounds to the neck region which severed a major artery and pierced a lung. She was also stabbed in the vaginal region and received other injuries to the vaginal and rectal area such as bruises and lacerations to the hymen and vaginal wall and finger nail gouges to the buttocks which indicated forced rape. Although no sperm was found in the body, the wrappings of a particular brand of condoms were found around the child.

Appellant was connected to the offenses by a significant amount of circumstantial evidence. He had been divorced from Layla's mother two months prior to this incident. From a recent contact with the family, he was informed of the mother's work schedule as well as the fact that the lock to their apartment door was broken and would not lock. A beer cup with his fingerprint on it was found within twenty-five feet of the Cummings apartment the morning of July 7. He had been at a local bar the evening of July 6, and his beer had been placed in a cup like the one found with his fingerprint on it when he left the bar at approximately 11:50 p.m.[1] At 1:14 a.m., he called his place of employment where all telephone calls are logged and asked the dispatcher to log the time of his call as 12:35 a.m. Later that morning he requested that the entry be changed to the correct time. Although the footprints in the soil around Layla's body were not distinguishable, tire tracks were. They showed the tracks of a vehicle which drove into the field from the country road with two tires with seven ribs each on the rear, a tire on the front left which had 6 ribs, and a bald tire on the front right. The marks were compatible with the tires on appellant's vehicle, except for the right front tire. However, there was evidence that, the right front tire on appellant's automobile had been changed, and changed as recently as the day of the crimes.

A search of appellant's bedroom on July 7, revealed a used condom containing semen in the trash along with its wrappings like that found on the ground near Layla's body. The particular brand of condoms in question was sold from a dispenser in the men's restroom at the bar appellant visited the evening of July 6. He was seen going into the restroom immediately prior to leaving the bar.

When questioned concerning his whereabouts during the pertinent times, appellant told the police he left the bar when it closed and slowly drove to the Burns Flat Superette, a distance of 24.7 miles, and arrived at 1:10 a.m. on July 7.[2] He later went by his girlfriend's house in Dill City, Oklahoma, and then home.

## I

Appellant contends that there is insufficient evidence that penetration occurred to support his conviction of rape. He concludes that the medical examiner could not state definitely whether penetration occurred, so the circumstantial evidence "of some sexual activity in the vicinity (an order form for a condom apparently was found in the area) does not establish that there was the requisite penetration."

Oklahoma law provides that rape requires actual penetration, but that any sexual penetration, however slight, is sufficient to complete the crime of rape. 21 O.S.1981, § 1113 and *Vaughn v. State*, 697 P.2d 963 (Okl.Cr.1985). In the present case, the medical examiner testified that the dead child's hymen, labia minor, labia major and vaginal wall were bruised. It was Dr. Choi's opinion that the bruising resulted from a blunt force trauma to the hymen consistent with being caused by a male penis. She further stated the injuries were inflicted while the victim was yet living.

1. The evidence was conflicting concerning his time of departure, but the bar operator testified that he usually closes at 12:00 a.m. and the bar's clock runs ten minutes fast. Other testimony indicated appellant could have left the bar as late as 12:20 a.m.

2. The detective who spoke with appellant testified that Rojem would had to have traveled at a rate of 14.6 miles per hour if he left at 12:00 a.m. and arrived at 1:10 a.m.

We find this evidence sufficient to allow any rational trier of fact to find that penetration occurred beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). When a child was too young and agitated to testify of whether penetration occurred, this Court held in *Boydston v. State,* 79 Okl.Cr. 172, 152 P.2d 701 (1944), that medical testimony of the bruised and lacerated condition of the victim's hymen and labia minora would sufficiently prove sexual penetration of at least one half inch, it being established that the hymen is located approximately that distance within the vagina. See also *Vaughn,* supra. Although the medical examiner herein was unwilling to render an opinion whether "penetration in the legal sense" occurred, there was adequate testimony from which the jury could deduce that it had in fact occurred. This assignment is without merit.

## II

■ Appellant contends there is no evidence that the victim was ever confined against her will and that the inference raised by the evidence is that she went willingly with appellant. He argues that she knew appellant well because he had previously been married to her mother for two and one-half years. He further asserts that there was no sign of a struggle and evidence of a later assault does not constitute kidnapping. Therefore, he reasons, that was insufficient evidence to support the conviction of kidnapping.

Appellant asserts that Layla Cummings went voluntarily with him the morning of July 7, 1984. Even if this were true, however, it would not prevent a conviction for kidnapping. Layla was only seven years old at the time of the offenses.

'A child of tender years is ordinarily regarded as incapable of consenting to its seizure and abduction and, when taken from its rightful guardian, is deemed to have been taken without its consent as a matter of law.'

*State v. Zimmer,* 198 Kan. 479, 426 P.2d 267, 284 (1967) quoting 1 *Am. Jur.* 2d, Abduction and Kidnapping, § 16; *People v.*

*Oliver,* 55 Cal.2d 761, 12 Cal.Rptr. 865, 361 P.2d 593 (1961); *State v. Hoyle,* 114 Wash. 290, 194 P. 976 (1921); *John v. State,* 6 Wyo. 203, 44 P. 51 (1896). The court in *Hoyle* expounded kidnapping under the common law. A child of tender years was incapable of consenting to its own seizure. A child of eleven and one-half years was not able to consent to being removed from his parent's or guardian's custody. *John,* supra.

We find that Layla Cummings was incapable of giving consent to her seizure and that the evidence offered at trial was sufficient that any rational trier of fact could find beyond a reasonable doubt the elements of kidnapping.

## III

■ During voir dire of the veniremen, one prospective juror responded affirmatively when asked whether she had personal, moral or religious convictions that would prevent her from considering the death penalty even if she believed appellant was guilty of first degree murder. She further agreed that she could not at that time think of a set of circumstances in which she could give the death penalty. Defense counsel later raised a hypothetical crime much different from the case at hand and inquired whether she could impose the death penalty in that case. She responded that she probably could.

Appellant complains that the trial court erred in excusing the juror for cause and thereby violated the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

This Court has previously held that a trial court exercises its discretion in excusing for cause those jurors in a capital case whose views concerning the death penalty would prevent or substantially impair the performance of their duties as jurors. *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). Because the trial court personally observes the jurors and their responses, this Court will not disturb its decision absent an abuse of discretion.

We find that the trial court herein did not abuse its discretion. Although the prospective juror did acknowledge that there might be some extreme situations in which she would consider imposing the death penalty, "deference must be paid to the trial judge who sees and hears the juror." *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841, 852 (1985). The Court in *Witt* denied that the record must be unmistakably clear concerning a juror's bias in relation to the death penalty, noting that some veniremen could not be asked enough questions to establish such a record. Even when the record is not unmistakably clear, a judge may nonetheless have a definite impression that the prospective juror would be unable to properly fulfill his or her oath.

## IV

■ By way of pretrial motions, appellant requested funds to hire a private investigator and a batch of experts including a criminologist, pathologist, microanalyst, chemist, and a mechanic. The need for experts as stated in the motions was that the State was offering the testimony of many experts who were involved in the investigation of the case, and that appellant also needed the designated experts' services to help him to prepare for trial. He requested the services of a private investigator to interview witnesses since his attorneys didn't have enough time to do all of the work involved. Appellant now claims that the trial court's refusal to provide funds to hire these experts denied him his Sixth Amendment right to effective assistance of counsel.

Appellant relies upon the decision of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to support his claims that the trial court erred in denying the funds. The Court held therein that access to psychiatric assistance should have been granted when defendant demonstrated prior to trial that sanity at the time of the offense was to be a significant factor at trial. The Court noted that the risk of inaccurate resolution of sanity issues is extremely high while a defendant may be able to present enough information to allow a jury to make a sensible determination if given the assistance of a psychiatrist.

■ The trial court herein properly denied the defense request for funds to hire the experts in question. First, the undeveloped assertions that the services of these experts are needed are not sufficient to qualify for the funds. *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231, 236 n. 1 (1986). Second, this Court has previously held that scientific evidence is ordinarily not vulnerable to inaccurate resolution and in itself does not ordinarily call for a defense expert. *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986) *cert. denied,* — U.S. ——, 107 S.Ct. 675, 93 L.Ed.2d 725. There, as here, defense counsel cross-examined the experts called by the State and was able to elicit the limitations of the tests and examinations performed. Due process was not endangered by the absence of a second set of experts.

■ Nor do we agree that the services of a private investigator should have been provided defense counsel to help with trial preparation. The Court in *Ake* noted that a State need not provide an indigent defendant the same resources that a wealthier defendant could buy. There was no abuse of the trial court's discretion. *Cardenas v. State*, 695 P.2d 876 (Okl.Cr. 1985).

## V

■ Appellant moved prior to trial for a change of venue from Washita County, asserting that he could not receive a fair trial due to prejudicial media coverage which included information of his previous criminal convictions. Virtually all jurors indicated during voir dire that they had heard of the case and may have discussed it with others. A few stated that their preconceived opinions of guilt would prevent them from serving fairly as jurors. These individuals were excused by the trial judge for cause.

The newspaper articles attached to his motion for change of venue were from local papers and detailed the offenses and

appellant's prior convictions arising from rapes. Appellant argues that a presumption of prejudice arises if there is media coverage of a criminal defendant's prior convictions, citing *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). However, the Court in *Murphy* specifically denied that in state court a defendant is presumptively denied due process by such coverage. *Id.* at 799, 95 S.Ct. at 2036. The issue is whether, judging from the totality of the circumstances, the defendant received a fundamentally fair trial. *Id.*

The news accounts in question detailed a great deal of information concerning appellant, his background, and the evidence presented in court, all of which was of public record. Although the details were not flattering, it was factual and not invidious or inflammatory in nature. *Beck v. Washington*, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). Moreover, each of the jurors seated stated they could set aside personal opinions and base their verdicts on the evidence presented at trial. *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984) *modified on other grounds*, 812 F.2d 593 (10th Cir.1987).

■ Appellant has not overcome the presumption that he could receive a fair trial. *Robison v. State*, 677 P.2d 1080 (Okl.Cr.) *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). Mere exposure to publicity surrounding a criminal case simply does not demonstrate prejudice. Media coverage extends to most homicides, particularly capital cases. As stated many times by this Court, a defendant is not entitled to jurors ignorant of his case. *Wooldridge v. State*, 659 P.2d 943 (Okl.Cr.1983). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented." *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751, 756 (1961). From a review of the record made of voir dire, we find that the jurors sitting in appellant's case were able to fairly judge the evidence at trial.

VI

■ Veniremen over the age of seventy are not compelled to serve as jurors in Oklahoma according to 38 O.S.1981, § 28(A). Appellant claims he did not receive a jury representative of a fair cross-section of Washita County because a distinct class was excluded from jury service. He claims that this infringed his Sixth, Eighth, and Fourteenth Amendments rights, citing *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

We disagree. In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Supreme Court articulated the constitutional principle that criminal defendants are entitled to juries drawn from a fair cross-section of the community. When underrepresentation of venires of distinctive groups in the community is due to their systematic exclusion, a defendant's Sixth Amendment rights are infringed. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Court delineated the elements a defendant must show to establish a prima facie violation of the fair cross-section requirement as:

(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury selection process.

*Id.* at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587. Appellant fails to establish any of the elements listed above.

In both *Taylor* and *Duren*, the defendants established that the underrepresented group, which was women, was sufficiently numerous and distinct that if they were eliminated from jury panels, the fair cross-section requirement could not be satisfied. This has not been demonstrated herein.

The State has presented 1980 census data showing that 16.57 percent of Washita County's population consisted of individuals sixty-five years of age and older. Those who may be exempted from jury

service due to age would be an even smaller percentage since the above figure would be further reduced by subtracting 1) those persons sixty-five to seventy years of age, 2) those not registered to vote, and 3) those who fall within another exemption. Thus, appellant did not make the first showing. Appellant did not make the second showing that the actual representation of this group was not fair or reasonable. He did not make any showing as to percentage represented by this group. Appellant has failed to establish his contention.

### VII

■ Appellant urges that he did not receive a fair trial due to a number of improprieties occurring in the guilt phase. The victim's mother, Cindy Cummings, testified on direct examination of appellant's proposed terms for their reconciliation made a week prior to the death of Layla. They included items such as Christianity not be mentioned in the home; appellant be able to smoke pot and drink alcohol; and, that he be allowed to "fool around with other women as long as he not bring it home." The defense, however, never objected to this testimony and did not request that the jury be admonished to disregard the evidence. Thus, waiver of error resulted. *Ross v. State*, 717 P.2d 117 (Okl.Cr. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 3209, 96 L.Ed.2d 696, and *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986) *cert. denied*, — U.S. —, 107 S.Ct. 249, 93 L.Ed.2d 173. Fundamental error was not present. *Thompson v. State*, 724 P.2d 780 (Okl.Cr. 1986).

■ Cindy Cummings and two other witnesses testified of appellant's behavior during sexual relations with them. Cindy Cummings testified that appellant did not use condoms, was violent, and that he left "fingerprint brusies on [her] bottom." No objection was made to this testimony.

Teresa Spake testified to her sexual relations with appellant and said he did not use condoms and that he asked her to shave her pubic hair because he started his sex life at a young age. Appellant objected to Spake discussing their sexual relations and

later asked for a mistrial. A third witness, Ladonna Broddrick, was asked over appellant's objection whether she had had sexual relations with him and if he had used condoms. She replied that appellant did not use condoms when they had had sexual relations.

The trial court has discretion in admitting evidence and its determination of relevancy will be reversed only upon a showing of severe prejudice or violation of a fundamental right. *Ozbun v. State*, 659 P.2d 954 (Okl.Cr.1983). In order to be relevant, evidence need not conclusively establish guilt. Any legal evidence is relevant if guilt or innocence of the defendant is inferrable from it or when it tends to establish a material fact in issue. *Ashlock v. State*, 669 P.2d 308 (Okl.Cr.1983). Considering the other evidence presented at trial, we do not believe the trial court abused its discretion in allowing the inquiries.

■ Appellant asserts that Spake's testimony that she had dated appellant for some time prior to July, 1984, was evidence of the extraneous offense of adultery. However, we believe this was apparent only to defense counsel. *Mahorney v. State*, 664 P.2d 1042 (Okl.Cr.1983). Nor do we believe that Cummings' mention of appellant's use of pot contributed to the verdicts of guilty. This error was slight compared to the weight of the evidence of appellant's guilt. *Id.*

Appellant points to four areas of argument by the prosecutor and now claims they were improper. He failed to object at trial, so our review is for fundamental error only. *Thompson*, supra. None of the remarks were grossly improper. *Newbury v. State*, 695 P.2d 531 (Okl.Cr.1985). This assignment is without merit.

■ Finally, in regard to the first stage of trial, appellant urges that he should receive a new trial because his prior criminal record was mentioned even though he did not testify. In one instance, a potential juror stated during voir dire that "whenever I read his previous record" it had an impact. Later, a State witness, the dispatcher appellant called early in the morn-

ing of July 7, 1984, testified that appellant asked him to change the time of the telephone call on the log because appellant "didn't want his parole officer to know he had been in the bar drinking."

 In the first instance, when the subject of appellant's prior record was mentioned, the prosecutor quickly changed the subject of voir dire to another matter. We agree with the trial judge that any harm appellant might have incurred was minimized. Additionally, the dispatcher's quote of appellant was not objected to by the defense. *Newbury,* supra. Considering the lack of significance the remarks had in light of the great weight of evidence of guilt, appellant's contentions are without merit.

## VIII

Appellant next complains that he was prejudiced in the sentencing stage of trial by the admission of certain evidence and by improper comments of the prosecutor. We note that appellant failed to object to the admission of the evidence on the same grounds at trial and did not object to the prosecutor's comments of which he now complains.

 The State introduced at trial authenticated copies of Michigan court records of appellant's two prior felony convictions. His only objection to them at trial was that there was no official from Michigan present at trial to verify the records. On appeal he complains they should not have been admitted because they included evidence of other crimes not testified to at trial by the victims. In particular, appellant had been charged with attempted murder in connection with one of two rape convictions. The charge had been dismissed.

Evidence of unadjudicated offenses may be admitted in the sentencing stage when relevant. *Newsted v. State,* 720 P.2d 734 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 599. In this case, the evidence was introduced when proving the aggravating circumstance that appellant had previously been convicted of committing violent felonies. 21 O.S.1981, § 701.12(1). The prosecution also sought to prove appellant's future dangerousness. 21 O.S.1981, § 701.12(7). This evidence was relevant to that issue. The victim of the prior offense testified at trial and related the circumstances surrounding the rape and was available for cross-examination. There was no error in admitting the court records.[3]

Within this assignment, appellant complains of comments by the prosecutor during closing argument. Having failed to object at trial to the comments, error has been waived save for fundamental error. *E.g., Ross.* Having found none, we find this assignment is without merit.

## IX

 Appellant asserts that he was unfairly denied the opportunity to present all of his mitigating evidence in the sentencing stage. More particularly, one witness was not allowed to compare appellant to the Apostle Paul once the witness had given her opinion that appellant had the ability to write well and could help others though imprisoned. Appellant was also denied by the trial court the freedom to introduce letters he had written to others to prove that he had writing ability.

We note that appellant did introduce the testimony of three people to the effect that he had writing talent and that he had redeeming value. The trial court did not abuse its discretion in limiting further testimony of the one witness' views of scripture. *Haury v. State,* 533 P.2d 991 (Okl. Cr.1975). The relevant facts to be proven by the letters had been amply established by the testimony of others. The letters tended to be self-serving. Their probative value was outweighed by the danger of unfair prejudice. 12 O.S.1981, § 2403. Not all facets of an individual's ability to adjust to prison life "must be treated as

---

**3.** The court records also contained evidence which may be considered as mitigating of appel-

lant's conduct.

relevant and potentially mitigating." *Skipper v. South Carolina,* 476 U.S. 1, 7, note 2, 106 S.Ct. 1669, 1672, note 2, 90 L.Ed.2d 1, 8, note 2 (1986).

## X

■ During voir dire, defense counsel attempted to discuss the definition of "reasonable doubt." He was prevented from doing so following an objection by the State. Appellant urges that he was denied due process of law because reasonable doubt was not defined for the jury.

Appellant concedes the fact this Court has consistently held that the term "reasonable doubt" is self-explanatory and attempted definitions should be avoided because of their tendency to cloud the issue. *Johnson v. State,* 632 P.2d 1231 (Okl.Cr. 1981). We are not persuaded by appellant's arguments to depart from this rule. The jury was properly advised that this was the standard of proof. There was no error by reason of the lack of a definition. *Spitznas v. State,* 666 P.2d 1307 (Okl.Cr. 1983).

## XI

Appellant contends next that his death sentence must be vacated because it was unconstitutionally imposed without particularized guidance as to mitigating factors. We have reviewed the record and are satisfied that the trial court properly instructed the jury of the definition of mitigating factors,[4] and of the balancing required against aggravating factors. 21 O.S.1981, § 701.11. The instructions given the jury were proper and the same as those previously upheld by this Court in a number of cases. *E.g., VanWoundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 447, 93 L.Ed.2d 395, and *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 249, 93 L.Ed.2d 173.

## XII

■ One of the aggravating circumstances found to exist by the jury was that the murder was committed for the purpose of avoiding lawful arrest or prosecution. 21 O.S.1981, § 701.12(5). Appellant asserts that there was insufficient evidence from which the jury could have found the circumstance beyond a reasonable doubt. Appellant contends that there is no specific evidence that he acted with such a purpose which would support the jury's finding; that the jury's conclusion is based only on speculation, citing *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985) and *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982).

■ This Court has never limited the type of evidence of this aggravating circumstance, which involves the state of mind of the accused, to direct evidence. *Banks,* supra. Rather, proof of this factor is, as intent in many prosecutions is, inferrable from circumstantial evidence. *Rudd v. State,* 649 P.2d 791 (Okl.Cr.1982). We find upon a careful review of the record sufficient evidence from which a rational juror could have found the existence of the circumstance beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr. 1985).

It is reasonable to believe from the evidence herein that the rapist used a condom. An individual such as appellant who was familiar with rape prosecutions would have probably known that by scientific testing of semen it can be determined whether the donor was a secretor, and the individual's blood type if he was a secretor. Also, any loose hairs found on a rape victim are studied to determine their origin. Nine unusual scalp hairs[5] were placed on the victim's thighs and vaginal area in an ap-

---

**4.** An itemized list of mitigating factors was given to the jury.

**5.** The presence of numerous scalp hairs was extremely unusual according to other law enforcement agencies consulted. The State's expert testified the donor was a multi racial person. The hairs were clean and recently cut; possibly originating from a hair stylist's floor according to the State's theory. Appellant had had a haircut the day prior to the offenses. The individual who cut his hair said that she had no black clients. However, we note that the hair stylist was not trained or qualified to identify hair as to the donor's racial origin.

parent attempt to lead investigators to an individual with that type of hair. There was also testimony from several individuals who appellant had requested to tell fabrications to help him create an alibi. There was also evidence that appellant told a number of lies to police officers. And certainly, the victim knew appellant and could have identified him. Two victims of earlier rapes committed by appellant testified. At trial one stated that Rojem had threatened to kill her if she told anyone of the incident. There is ample evidence to support a finding that appellant killed for the purpose of avoiding prosecution.

## XIII

■■■ During the sentencing stage of appellant's trial, the jury found beyond a reasonable doubt that the murder was especially heinous, atrocious, or cruel. 21 O.S.1981, § 701.12(4). He now contends that this Court has not interpreted and applied this circumstance in a consistent and meaningful manner, and, therefore, cannot now constitutionally use it as a ground for imposing the death penalty.

We recently addressed this issue in *Stouffer v. State,* 742 P.2d 562 (Okl.Cr. 1987) (Opinion on Rehearing). We there held that this aggravating circumstance should only apply when a death is preceded by torture or serious physical abuse. The jury in this case was properly instructed of this definition, and their finding of its existence beyond a reasonable doubt is supported by the evidence of the rape and injuries to the victim. The seven-year-old victim received two large stab wounds to the neck region which severed a major artery. The evidence is not clear if she received the stab sounds before or after the rape, but there were bruises and lacerations to the hymen and vaginal as well as fingernail gouges to the buttocks which indicated a forced rape. There is no doubt that the young victim suffered considerable pain from the rape. The medical examiner testified that the vaginal bruises were consistent with the forcing of a male penis into the tissue. She also testified that the injuries were inflicted while the victim was yet alive. There is no doubt that the injuries

were sufficient to meet the requirements of *Stouffer.*

## XIV

Appellant also challenges the constitutionality of another aggravating circumstance found by the jury, which is "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society...." 21 O.S.1981, § 701.12(7). His claim is that neither the statute itself nor the trial court's instructions, which have previously been approved by this Court, gave guidance to the jury in evaluating the risk of future dangerousness, and is, therefore, being applied in an unconstitutional manner.

Again, this Court has spoken to these particular issues in a number of cases and found them to lack merit, as we do here. *Walker v. State,* 723 P.2d 273 (Okl.Cr. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 559, 93 L.Ed.2d 600; *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985); and, *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified on other grounds, sub nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984).

## XV

■■■ Appellant's final assignment of error is that the trial court erred in not instructing the jury that they must find that the death penalty is justified beyond a reasonable doubt before it could be assessed.

The jury was properly instructed that they must find beyond a reasonable doubt that one or more aggravating circumstances were present before they could consider the death penalty. Then they were further advised that they must find the mitigating circumstances were outweighed by the aggravating ones before the death penalty could be assessed. This was proper and required under 21 O.S.1981, § 701.11. The trial court was not constitutionally required, however, to instruct the jury of the standard now claimed by appellant for the justification of the death penalty. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77

L.Ed.2d 235 (1983). "Specific standards for the balancing of the aggravating and mitigating circumstances are not constitutionally required." *Brogie v. State,* 695 P.2d 538, 544 (Okl.Cr.1985). This assignment is without merit.

### XVI

Pursuant to 21 O.S.Supp.1985, § 701.13(C), we have reviewed the record to determine whether the sentence of death was imposed as a result of passion, prejudice, or any other arbitrary factor, and find that it was not. We also find that each of the aggravating circumstances found to exist by the jury are supported by the evidence.

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., dissents.

PARKS, Judge, dissenting:

I am compelled to dissent on the basis of appellant's first assignment of error, wherein he argues that the first stage of his capital trial was so infected with prejudicial factors that he was deprived of a fair and impartial trial. First, appellant complains that his ex-wife, Mindy Cummings, was permitted to testify to irrelevant and highly prejudicial matters in the guilt-innocence stage concerning appellant's alleged conditions of reconciliation. In response to the prosecutor's questioning, Ms. Cummings testified that appellant's conditions were that he:

> be allowed to drink, use drugs, use pot, fool around with other women, so long as he didn't bring it home ... that he was not acquainted with the Lord; that he not be bothered with any mention of the Lord at all in his home.

I agree with appellant that such testimony was irrelevant and should not have been admitted. *See* 12 O.S.1981, §§ 2401, 2402. Such testimony falls within the category of inadmissible evidence of "other crimes or acts" under 12 O.S.1981, § 2404(B), and was undoubtedly highly prejudicial. *See*

*Lewis v. State,* 651 P.2d 1344, 1346 (Okla. Crim.App.1982); *Turner v. State,* 629 P.2d 1263, 1265 (Okla.Crim.App.1981).

When an accused is put on trial, he is to be convicted, if at all, by relevant evidence that shows him guilty of the offense charged, and evidence concerning unrelated crimes must be excluded. *See Wilkett v. State,* 674 P.2d 573, 576 (Okla.Crim.App. 1984). Whatever probative value, if any, possessed by the references to drug usage and illicit sexual activity was clearly outweighed by the danger of unfair prejudice. *See* 12 O.S.1981, § 2403. At the time such testimony was offered, the prosecutor failed to state an exception making such evidence admissible. *See Burks v. State,* 594 P.2d 771, 774 (Okla.Crim.App.1979). As correctly noted by the majority, however, the error was not preserved at trial with a timely specific objection as required by 12 O.S.1981, § 2104(A)(1). Therefore, the issue becomes whether this error arises to the level of fundamental or plain error affecting substantial rights of the defendant. *See Tobler v. State,* 688 P.2d 350, 353 (Okla.Crim.App.1984); 12 O.S.1981, § 2104(D). An accused has a fundamental right, regardless of his guilt or innocence or position in society, to a fair and impartial trial before an impartial jury free from unfair prejudice. *Okla. Const.* art. II, § 20; *Tobler, supra.* The possibility of prejudice was increased here, because of the trial court's failure to issue a cautionary admonishment to the jury at the time the other crime evidence was received, as required by *Burks v. State, supra,* at 775. In addition, the prosecutor's questioning of Ms. Cummings concerning the appellant's refusal to accept her religious beliefs was likewise irrelevant, and could only be designed to prejudice the jury against the appellant. Clearly, it is improper to directly, or indirectly, impair or enhance the credibility of a witness by questions concerning religious beliefs. *See* 12 O.S.1981, § 2610.

If this had been the only error which occurred during the guilt-innocence stage of trial, I would be hard-pressed to find reversible error on this issue alone, in light of the failure to object and the strong

circumstantial evidence of guilt. In reviewing appellant's other contentions, however, I am persuaded that the cumulative effect of the errors rises to the level of fundamental or plain error adversely affecting the fundamental fairness and impartiality of the proceedings. *See Tobler, supra; Cobbs v. State,* 629 P.2d 368, 369 (Okla.Crim.App.1981); 12 O.S.1981, § 2104(D).

For example, the prosecutor used leading questions to prompt Ms. Cummings to testify that sexual intercourse with appellant was "rough" and "violent in nature." Over the objection of defense counsel, the prosecutor was allowed to question Teresa Spake concerning whether she had sexual relations with appellant in July of 1984. Ms. Spake testified that she was eighteen years old, that she had sexual relations with appellant, that he never used a condom, and that appellant asked her to shave her pubic hair because, according to appellant, "he started his sex life young...." (Tr. 382–83) Defense counsel's request for a mistrial was overruled. On redirect examination, the prosecutor further exploited the situation by asking Ms. Spake whether appellant told her "that he preferred the pubic area to be bare?" and how many times such a request was made. The State also called Ladona Brodderick who testified, over objection, that she had sexual relations with appellant and that he never used a condom. Again, whatever probative value, if any, existed in such testimony was clearly outweighed by the danger of unfair prejudice and thus, should have been excluded. *See* 12 O.S.1981, § 2403. *See Stowe v. State,* 590 P.2d 679, 682 (Okla. Crim.App.1979).

My conclusion that a reversal is warranted is further supported by the presence of prosecutorial misconduct by District Attorney Steve Suttle during first stage closing argument. Mr. Suttle repeatedly accused defense counsel of creating a "smoke screen" to mislead the jury:

BY MR. SUTTLE: Ladies and gentlemen ... in the practice of law ... a good tactic is to develop a smoke screen. Let's not try the defendant ... Let's try the OSBI. Let's ridicule the county sheriff. Let's talk about the ... Police Department. Let's accuse the District Attorney of making faces during argument. Let's come along here and let's set a whole bunch of little fires and let's make a big smoke screen. And in this case, you would almost literally have to put up a smoke screen so you people couldn't see this ... [cup with fingerprints] ... They would have to set a major prairie fire, not just a smoke screen ... a major prairie fire across here to keep you from seeing all this....

(Tr. III 892) Such comments amounted to an improper expression of the prosecutor's "personal belief or opinion as to the truth or falsity of any testimony," are "calculated to inflame the passions or prejudices of the jury," and "divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused...." *ABA Standards for Criminal Justice, The Prosecution Function,* §§ 3–5.8(b)(c) & (d) (1980). *See Bechtel v. State,* 738 P.2d 559, 561–62 (Okla.Crim.App.1987) (Parks, J., Specially Concurring).

During Mrs. Perry's closing argument on behalf of appellant, co-counsel Mr. Perry approached the bench and objected "to Mr. Suttle making faces at my co-counsel while she's making argument." The trial judge admonished Mr. Suttle to "avoid" such conduct. On the record, Mr. Suttle stated "I object to Mr. Perry making a big deal about it, too ... I smiled at the sheriff." (Tr. III 869) Such discourteous, disrespectful, and disgraceful conduct on the part of District Attorney Suttle is degrading to our system of justice and is totally inexcusable. Such behavior is in derogation of the Oklahoma *Code of Professional Responsibility,* DR 7–106(C)(6), which provides that an attorney shall not engage "in undignified or discourteous conduct which is degrading to a tribunal." 5 O.S.1981, Ch. 1, App. 3. An attorney has a duty to "maintain, while in the presence of the courts of justice, or in the presence of judicial officers ... the respect due to the said courts and judicial officers." 5 O.S.1981, § 3(1). A prosecutor "should support the authority of the

court and the dignity of the trial courtroom by strict adherence to the rules of decorum and by manifesting an attitude of professional respect toward the judge, opposing counsel, witnesses, defendants, jurors, and others in the courtroom." *ABA Standards for Criminal Justice, The Prosecution Function,* § 3–5.2(a) (1980). "It is unprofessional conduct for a prosecutor to engage in behavior or tactics calculated to irritate or annoy the court or opposing counsel." *Id.* at § 3–5.2(c).

In his final closing argument during the first stage, Mr. Suttle went outside the record and made arguments designed solely to inflame the passions and prejudices of the jury:

> There has not been ... a more horrible crime committed in this county ... or ... Oklahoma ... And when you find the defendant guilty of murder and when you find the defendant guilty of kidnapping and when you find the defendant guilty of rape, those of us who, in our own small way, who never knew this child, but have lived it, can bury this child ... And at this stage of trial when you find the defendant guilty of rape and kidnapping, we ask you to assess against him the penalty of 1000 years in prison on each of those two counts.

While the crime in the instant case was especially brutal and senseless, this Court cannot tolerate arguments calculated solely to inflame the passions and prejudices of the jury. *See Ward v. State,* 633 P.2d 757, 760 (Okla.Crim.App.1981); *ABA Standards, supra,* § 3–5.8(c).

Based on the foregoing, I am compelled to agree with Judge Bussey's assessment under similar circumstances where, writing for the majority, he concluded that "[u]nfortunately, the appellant's right to a fair trial was the victim of an overzealous prosecutor." *Brewer v. State,* 650 P.2d 54, 57 (Okla.Crim.App.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983). Accordingly, I dissent.