Richard Norman ROJEM, Jr., Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. PC–95–1127.

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1996.

Randy A. Bauman, Deputy Division Chief, Capital Post–Conviction, Oklahoma Indigent Defense System, Norman, for Petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma and Sandra D. Howard, Assistant Attorney General, Oklahoma City, for Respondent on appeal.

## OPINION AFFIRMING DENIAL OF POST–CONVICTION RELIEF

CHAPEL, Vice Presiding Judge:

Richard Norman Rojem, Jr. was tried by a jury in Washita County District Court, Case No. CRF–84–35, and convicted of Kidnapping, Rape in the First Degree and Murder in the First Degree of Layla Cummings. The jury recommended Rojem be sentenced to 1,000 years imprisonment for kidnapping, 1,000 years imprisonment for rape, and death for murder. The Honorable Paul C. Braun imposed sentence in accordance with the jury recommendation. Rojem appealed his judgment and sentence to this Court and we affirmed.[1] This Court denied Rojem's petition for rehearing and the United States Supreme Court denied Rojem's petition for certiorari.[2]

On December 12, 1988, Rojem filed an application for post-conviction relief with the district court. The district court denied Rojem's application and Rojem appealed. This Court affirmed the district court's order.[3] On November 2, 1992, the United States Supreme Court denied Rojem's petition for certiorari.[4]

On January 6, 1994, Rojem filed a second application for post-conviction relief in the district court. The district court dismissed the second application on the grounds that it was not filed in a timely manner. Rojem appealed the order to this Court. This Court found that Rojem's application was filed timely and reversed and remanded the case to the district court for further proceedings.[5]

On remand, Rojem filed an Amended Second Application for Post–Conviction Relief and for an Evidentiary Hearing. The State responded to the application. After hearing oral argument, the district court denied Rojem's application and request for an evidentiary hearing. The district court also denied Rojem's motion for discovery and motion to hold the case in abeyance. Rojem appeals the district court's orders.

Layla Cummings, a seven-year-old girl, was abducted from her home in Elk City, Oklahoma sometime during the late evening or early morning hours of July 6–7, 1984. Her body was discovered on the morning of July 7 in a field. Cummings was the daughter of Rojem's ex-wife. Circumstantial evidence connected Rojem to Cummings' murder and abduction.[6]

On appeal of the district court's denial of his second application for post-conviction relief, Rojem raises five propositions of error. We have repeatedly stated that Oklahoma's Post–Conviction Procedure Act[7] is

---

1. *Rojem v. State*, 753 P.2d 359 (Okl.Cr.1988).

2. *Rojem v. Oklahoma*, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988).

3. *Rojem v. State*, 829 P.2d 683 (Okl.Cr.1992).

4. *Rojem v. Oklahoma*, 506 U.S. 958, 113 S.Ct. 420, 121 L.Ed.2d 343 (1992).

5. *Rojem v. State*, 888 P.2d 528 (Okl.Cr.1995).

6. For a more detailed discussion of the facts of this case see *Rojem v. State*, 753 P.2d 359 (Okl. Cr.1988).

7. 22 O.S.1991, § 1080 *et seq.* Rojem filed his amended application for post-conviction relief in early 1995, and the district court issued its order denying relief on October 6, 1995. Consequently, Oklahoma's new capital post-conviction procedural rules, 22 O.S.Supp.1995, § 1089 (eff. Nov. 1, 1995), and this Court's revised rules, 22 O.S.Supp.1996, Ch. 18 App. (eff. Nov. 1, 1995), are not applicable and do not govern the disposition of this case. Accordingly, we analyze this case under the old post-conviction procedure act.

not an opportunity to raise new issues, resubmit claims already adjudicated, or assert claims that could have been raised on direct appeal.[8] Moreover, when a defendant files a second or subsequent application for post-conviction relief, as Rojem has in this case, 22 O.S.1991, § 1086, provides that:

> All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

It is against this statutory backdrop that we begin our review of the claims that Rojem raises in his second application for post-conviction relief.

In his first proposition, Rojem makes two arguments. First, he contends that the district court erred in refusing to grant him compulsory discovery. This argument hinges, in part, on Rojem's claim that he recently discovered exculpatory evidence that the State wrongfully withheld from him. Second, and as a corollary to his first argument, Rojem contends this recently discovered evidence was exculpatory and material to his case and the suppression of such evidence violated due process.

The first issue we must address is whether Rojem's discovery request is barred by the doctrine of res judicata. In his first application for post-conviction relief, Rojem argued

that "the trial court erroneously denied his Motion to discover the State's entire case file which 'would provide information necessary to prove Mr. Rojem did not commit this crime.' "[9] This Court disagreed with Rojem's assertion and found that the trial court properly denied his motion for discovery.

■ As in his first post-conviction appeal, Rojem claims in his second post-conviction appeal that the trial court erred in refusing to grant complete discovery of the State's entire file.[10] Rojem specifically requested access to (1) all forensic evidence gathered in the case including all OSBI files on tests run on the acid phosphatase found on the oral swab taken from the crime scene, and testing of any DNA that might have been present in that sample; (2) inspection and copying of all law enforcement files; (3) all crime scene photographs and medical examiner slides; (4) access to the light bulb from Cummings' front porch; (5) reports of State interviews with Dr. Joe Rupp and any reports prepared by Dr. Rupp; and (6) evidence related to the private investigation conducted by Donald Cummings, the victim's natural father. Since the issue of discovery was raised and ruled on in Rojem's first application for post-conviction relief, the doctrine of res judicata bars further litigation of this issue.

Rojem attempts to circumvent this hurdle by contending that new evidence has come to light since the denial of his first application for post-conviction relief was final. In support of this contention, Rojem relies heavily on Oklahoma State Bureau of Investigation ("OSBI") reports regarding Bobby Schoonover and Carl Bounds, which were uncovered during the post-conviction discovery conducted in the case of Adolph Munson.[11] The

---

8. *Moore v. State*, 889 P.2d 1253, 1255 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995).

9. *Id.*

10. On September 14, 1994, Rojem sought a discovery order from this Court. At that time, his appeal of the district court's first denial of his second application for post-conviction relief was pending before this Court. Because the case had been fully briefed and the case was pending before the Court, we found that it would be

inappropriate to grant the discovery motion at that time.

11. Munson was convicted and sentenced to death for the murder of Alma Hall. His conviction and sentence were affirmed on direct appeal. *Munson v. State*, 758 P.2d 324 (Okl.Cr. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989). During post-conviction proceedings, the defense discovered the following evidence: (1) State witness Gerald Klemke was hypnotized by an OSBI agent prior to testifying; (2) 165 photographs of the crime scene; and (3) 300 to 500 pages of police and OSBI

Schoonover and Bounds documents were not turned over to Rojem's trial counsel. Neither Rojem's direct appeal attorney nor the attorney who represented Rojem in his first post-conviction application had access to these reports. We will examine this evidence to determine whether, in light of this newly discovered evidence, compulsion of further discovery is required.

■ At the outset, we reiterate the well-established rule that compulsory discovery is not required in post-conviction proceedings.[12] In *Pickens v. State*,[13] this Court found that the trial court did not err in refusing to order discovery during post-conviction proceedings. In making this finding the Court observed, "although a prosecutor is obligated to turn over any exculpatory evidence, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Appellant has presented nothing indicating this was not done."[14] Accordingly, this Court found that the decision to not compel further discovery was not erroneous. Likewise in this case, we decline to require blanket compulsory discovery in all post-conviction proceedings. We now examine the two recently discovered OSBI reports to determine whether these reports indicate that the State may have withheld exculpatory evidence in violation of *Brady v. Maryland*,[15] as Rojem alleges, and whether, based on this particular failure to disclose, further discovery is required.

■ "[S]uppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[16] As the Supreme Court explained:

[the] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."[17]

Here, the district court concluded that the two OSBI reports at issue were not exculpatory and were not material to Rojem's case. We agree with the district court that this evidence was not material.

■ The OSBI report regarding Bobby Schoonover reveals that Schoonover was staying in a motel in Clinton, Oklahoma on July 12, 1984. There is nothing in the report to suggest that Schoonover was in Clinton or

---

reports concerning other suspects in the case. The trial court concluded this evidence was exculpatory and material. We agreed, and Munson's case was remandgr for a new trial. *State v. Munson*, 886 P.2d 999 (Okl.Cr.1994).

12. *Pickens v. State*, 910 P.2d 1063 (Okl.Cr.1996) ("a petitioner seeking post-conviction relief has no right to obtain the prosecution's entire file"); *Woodruff v. State*, 910 P.2d 348 (Okl.Cr.1996) (no error in district court's decision not to grant discovery in post-conviction proceeding); *Hooks v. State*, 902 P.2d 1120, 1125 (Okl.Cr.1995) (same), *cert. denied*, — U.S. —, 116 S.Ct. 1440, 134 L.Ed.2d 561 (1996). See *Kyles v. Whitley*, — U.S. —, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (federal constitution does not require compulsory discovery in criminal cases).

13. 910 P.2d at 1071.

14. *Id.*

15. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

16. *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196–1197. See *State v. Munson*, 886 P.2d 999 (Okl.Cr.1994); *see also Bowen v. Maynard*, 799 F.2d 593, 602 (10th Cir.), *cert. denied*, 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986).

17. *Kyles v. Whitley*, — U.S. at —, 115 S.Ct. at 1566, 131 L.Ed.2d 490 (citations omitted). See *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (establishing the reasonable probability test for materiality); *Moore*, 889 P.2d at 1256 ("[a] new trial will not be granted where the evidence merely tends to discredit or impeach a witness without some probability that the trial result would be changed"); *Munson*, 886 P.2d at 1002 (reasonable probability is a probability that undermines confidence in outcome of trial); *Sadler v. State*, 846 P.2d 377, 383 (Okl.Cr.1993) ("[e]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome").

Elk City on July 7, the day on which Cummings was kidnapped and murdered. Staying in a motel in a nearby city several days after a murder is insufficient to connect one to that crime. The report further indicates Schoonover lied to motel personnel by telling them that he was an OSBI agent who was investigating the murder of Alma Hall and "the little girl homicide." Again, this lie is insufficient to connect Schoonover to Cummings' murder. Schoonover also described the wounds inflicted on the child to motel personnel. Rojem attaches great significance to Schoonover's description of Cummings' wounds claiming that this information was not public information at the time Schoonover made his statement to motel personnel. However, to support this claim, Rojem provides only the unsubstantiated contention of an Oklahoma Indigent Defense System ("OIDS") investigator. This is insufficient. Further, in contrast to Rojem's unsubstantiated claim, the OSBI report indicated that in an interview with Schoonover, Schoonover stated that he did not know anything about the case other than what he read in the newspaper or what his employer told him. Contrary to Rojem's claim, it does not appear that Schoonover was a suspect in the case nor does it appear that Schoonover had any reasonable connection with the case. The OSBI report is not exculpatory and does not undermine confidence in the outcome of the trial.

■ Rojem also cites an OSBI report regarding Carl Bounds. Rojem contends that, like Schoonover, Bounds was a suspect in the Cummings murder and the State should have turned over OSBI reports regarding Bounds. On July 10, 1984, Carl Bounds was in custody in Cordell, Oklahoma on a charge of indecent exposure. Bounds lived in Sayre, Oklahoma. The OSBI report revealed that at the time of his arrest, there was blood in Bounds' car and there were work boots in the car. A

Cordell officer believed that the boots were similar to shoe prints found at the site where Cummings' body was found and the officer turned this information over to OSBI Agent Rick Zimmer. However, the OSBI report reveals that the OSBI agents dismissed the evidence regarding Bounds because the agent who worked the crime scene "did not see any foot tracks at that scene where shoe tracks would have been discernable." [18] It is likewise clear from the trial record that there were no discernable footprints at the crime scene. Simply because Bounds was arrested for indecent exposure and there was a stain that looked like blood in his car is insufficient to connect him to Cummings' murder. The evidence is simply too attenuated to be exculpatory and there is no reasonable probability that it would have affected the outcome of the case.[19]

We find that neither the Bounds nor Schoonover documents constitute exculpatory evidence withheld in violation of due process. We further find the district court was not required to compel discovery. Based on our review of the record in light of these two documents, we find these documents are not "sufficient to raise a substantial question of compliance with earlier discovery orders" and we do not find that the "material being sought would have resulted in a different outcome at trial." [20]

■ Rojem also points to other documents and pieces of information to argue that the trial court erred in denying discovery. Specifically, Rojem points to: (1) a report in the possession of the St. Clair Shores, Michigan, Police Department regarding an "expert witness" who reviewed Rojem's prior felony convictions for the State; (2) reports of interviews that the State conducted with Rick Quimby, a witness who testified at trial; and (3) the private investigation being conducted by Donald Cummings, the victim's natural

---

18. Vol. I O.R. at 54.

19. Rojem also refers to evidence that the wheel base of Bounds' car was the same as the wheel base of the tire tracks found at the murder scene. This information, however, comes from a 1994 OSBI report and not from the earlier OSBI reports that Rojem claims were wrongfully withheld. In response to the investigation of Bounds

by Rojem's post-conviction counsel, Officer Ferrero made a follow-up visit with Bounds. During this visit, the wheel base of Bounds' 1971 Ford measured 64 inches. Rojem attached a copy of the OSBI report to pleadings filed in the district court.

20. Rule 9.7(D)(3).

father, and the leads that may have been developed during the course of Cummings' personal investigation. Rojem filed his first application for post-conviction relief in the district court on December 12, 1988. The district court denied that application on November 21, 1989. Rojem filed his appeal of this denial in September 1990. The evidence referred to directly above was known, or should have been known, to Rojem at the time he filed his original application and appeal. The doctrines of waiver and issue preclusion precluded us from reconsidering this information and Rojem's discovery request based on this information.

Rojem also contends that the Bounds and Schoonover documents reveal that the State withheld exculpatory evidence in violation of due process. As discussed above, we do not find that the Bounds and Schoonover reports undermined confidence in the outcome of the trial and the State's failure to turn over these documents did not violate due process. Accordingly, we deny relief based on this proposition of error.

■ In Proposition II, Rojem contends that he was denied due process because he was denied investigative and expert assistance at trial. This Court found in both Rojem's direct appeal and his appeal of his first application for post-conviction relief that the trial court did not err in denying Rojem's funds for expert and investigative witnesses. The doctrine of res judicata bars re-litigation of this issue. Rojem claims that the newly discovered evidence that he outlined in Proposition I should warrant reconsideration of this issue. We find that, given the limited value of the newly discovered evidence, our analysis of this issue remains unchanged. Relief under this proposition of error is denied.

■ In Proposition III, Rojem argues that the State deprived him of effective assistance of counsel at trial because it wrongfully withheld exculpatory evidence which undermined trial counsel's ability to be effective. We have found that the undisclosed evidence was not exculpatory. Accordingly, we find that the failure to disclose this evidence did not render trial counsel ineffective. Relief is denied based on this proposition of error.

■ In his fourth proposition of error, Rojem contends that the trial court erred in failing to hold an evidentiary hearing. Neither our State nor the federal constitution afford Rojem the right to an evidentiary hearing on post-conviction review.[21] We find no reason why this case could not be disposed of on the pleadings and record, and we find the trial court did not err in failing to hold an evidentiary hearing.

■ In his final proposition of error, Rojem argues that the trial court erred in failing to hold his case in abeyance because Rojem was without counsel. After the case had been fully briefed below and after the parties had ably argued their case to the district court, the post-conviction division of OIDS suffered a serious cut in their budget. Rojem's post-conviction attorney had to seek other employment. However, because the briefs and arguments in this case were all conducted prior to the funding crisis, we find that the funding crisis did not deprive Rojem of his right to counsel in the district court. Moreover, on appeal of the district court's denial of his second application for post-conviction relief, Rojem was ably represented by counsel in this Court. Accordingly, we find that relief is not warranted under this proposition of error.

The order of the District Court denying post-conviction relief is **AFFIRMED.**

JOHNSON, P.J., and LUMPKIN, LANE and STRUBHAR, JJ., concur.

---

**21.** *Moore,* 889 P.2d at 1258.