**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

RICHARD NORMAN ROJEM,

       Petitioner-Appellee/
       Cross-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary,

       Respondent-Appellant/
       Cross-Appellee.

Nos. 00-6056 & 00-6060

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
## (D.C. No. CIV 96-CV-1337-M)

K. Leslie Delk, Norman, Oklahoma, for Petitioner-Appellee/Cross-Appellant.

Seth S. Branham, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General of Oklahoma with him on the briefs), Oklahoma City, Oklahoma, for
Respondent-Appellant/Cross-Appellee.

Before **TACHA** , Chief Judge, **BALDOCK** , and **LUCERO** , Circuit Judges.

**BALDOCK** , Circuit Judge.

Richard Norman Rojem was convicted of the first degree rape, kidnaping and murder of seven-year-old Layla Dawn Cummings, his former step-daughter. He received the death penalty for the murder and one thousand years' imprisonment for both the kidnaping and rape. The Oklahoma Court of Criminal Appeals affirmed on direct appeal, *Rojem v. State*, 753 P.2d 359 (Okla. Crim. App.), *cert. denied*, 488 U.S. 900 (1988), and denied post-conviction relief, *Rojem v. State*, 829 P.2d 683 (Okla. Crim. App.), *cert. denied*, 506 U.S. 958 (1992); *Rojem v. State*, 925 P.2d 70 (Okla. Crim. App. 1996). On federal habeas corpus review, *see* 28 U.S.C. § 2254, the district court upheld the convictions, but conditionally granted relief from the death sentence because the trial court failed to instruct the jury to weigh the aggravating and mitigating evidence when deciding whether to impose the death penalty. Both parties appeal. We affirm.

**FACTS**

Between 10:00 p.m. on July 6, 1984, and 1:15 a.m. on July 7, Layla was abducted from the apartment where she lived with her mother, Mindy Cummings, and her brother, Jason Cummings. Rick Quimby, who worked at a motel across the street, notified Mindy at work that when he went to check on the children Layla was missing. Jason went to sleep when his mother went to work, but he woke up when he heard a noise. He testified that he heard no cries or struggle but

-2-

saw "Rick." [1]  Don Cummings, Layla's and Jason's father, testified that Jason told him he thought Layla was with "Rick," but he did not see or hear anything.

A farmer found Layla's body in a field the morning of July 7.  She died of stab wounds to her neck.  She also had been stabbed in the vaginal area.  There was blood on the crotch area of her nightgown, and blood had soaked the soil two to three inches under her neck and chest.  Her buttocks skin was torn, consistent with fingernail scratches.  There was blunt force trauma to her hymen, but no sperm were found in her body.

Most evidence connecting Rojem to the crime was circumstantial.  He recently had been divorced from Mindy and had tried to reconcile with her.  He knew her work schedule and of the broken lock to the apartment door.  A plastic cup with his fingerprint on it was found near the apartment.  Upon leaving a bar between 11:50 p.m and 12:20 a.m., his beer had been placed in a similar cup.  At 1:14 a.m., Rojem called his employer and asked the dispatcher to log the call at 12:35 a.m.  Later, he requested the call be logged at the correct time.

The police found the outer wrappings of a condom in the folds of Layla's nightgown.  Also at the crime scene was an order form packed with that brand of condoms.  When police searched Rojem's room, they found a condom package and a used condom containing semen.  All of this amounted to one complete

_____

[1]     Rojem's nickname was Rick.

-3-

condom package. This common brand of condoms was sold in a dispenser in the restroom at the bar where Rojem had been. He had gone to the restroom immediately before leaving the bar.

Tire track impressions near the body were consistent with the two rear tires and one front tire on Rojem's car. The other front tire track impression was inconsistent with the corresponding tire on Rojem's car. The State, however, presented evidence that Rojem had changed that tire the morning of July 7. That tire was a fourteen inch radial, whereas the others were fifteen inch non-radials.

Rojem had asked a co-worker to tell police that the co-worker and another had changed Rojem's tire after a blowout. Rojem told the co-worker that "'[t]he police have got a tire and it may be the tire they put me in jail with'" and if the co-worker did not tell he had changed a tire it would be "capital punishment" and "two lives instead of one." Tr. vol. II at 211-12. The co-worker refused to lie. Rojem told another co-worker that his car was used in a homicide and that he had the car the whole time.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to this appeal. *See Williams v. Taylor*, 529 U.S. 362, 402 (2000). Under AEDPA, if a claim is adjudicated on its merits in state court, a petitioner is entitled to federal habeas relief only if he can establish that the state court

decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). We presume state court factual findings are correct, absent clear and convincing evidence rebutting that presumption. *Id.* § 2254(e)(1). "If [a] claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, [this court] review[s] the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error." *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999).

## APPEAL NO. 00-6056

The trial court failed to give the Oklahoma uniform jury instruction[2] directing the jury to weigh the aggravating and mitigating circumstances when deciding whether to impose the death penalty. The federal district court held the failure to provide this instruction denied Rojem his Eighth Amendment right to a reliable sentence and his Fourteenth Amendment right to due process. The court therefore ordered the State to provide Rojem with a new capital-sentencing

---

[2] OUJI-CR 440 (now OUJI-CR 4-80) provided: "If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed."

proceeding. The State argues that despite the omission of this instruction, the instructions actually given and the context of the entire trial show no reasonable probability the jury applied the instructions in a way that allowed it to ignore mitigating evidence, act outside the scope of its sentencing authority, or sentence Rojem to death without determining the aggravating circumstances outweighed the mitigating evidence.

On direct appeal rehearing, Rojem first argued the trial court violated his constitutional rights by failing to give the weighing instruction. After determining Rojem waived this claim because he failed to raise it on direct appeal, the Oklahoma Court of Criminal Appeals then rejected it on its merits.[3] Citing only *Davis v. State*, 665 P.2d 1186, 1203-04 (Okla. Crim. App. 1983), the court decided the instructions properly informed the jury it was authorized to consider imposing the death penalty if it found aggravating circumstances and allowed the jury to fairly consider life or death punishment.

*Davis*, however, is distinguishable. The trial court in that case gave a proper weighing instruction. *Id.* at 1202.

The federal district court found that Oklahoma law requires a weighing instruction and its omission violated the Fourteenth Amendment, allowing the

---

[3] Because the state appellate court considered this claim on its merits, we do not consider whether appellate counsel was ineffective for failing to raise this claim until rehearing.

jury to act outside the scope of its statutory authority and permitting it to sentence Rojem to death without finding the aggravating circumstances outweighed the mitigating circumstances. The court interpreted the entire instructions as indicating the jury could sentence Rojem to death once it unanimously agreed upon the existence of at least one aggravating circumstance. Without a weighing instruction, the court determined the mitigating instruction suggested consideration of mitigating circumstances was optional. Also, the court decided the instruction informing the jury to record the aggravating circumstances it found may have suggested to the jury the aggravators, not the mitigators, were the important consideration. The court found no reference to a weighing requirement anywhere in the trial transcript which could have possibly cured the omission.

In addition, the court found an Eighth Amendment violation because there was a reasonable likelihood the jury applied the instructions in a way that it was prevented from considering the mitigating evidence and in fact failed to consider Rojem's constitutionally relevant mitigating evidence. The court noted the second-stage instructions did not inform the jury it should consider all evidence. Furthermore, it found no clarification of the jury's obligation to consider mitigating evidence within the entire context of the trial and the mitigating evidence, comprising only twenty-nine pages of the transcript, was not so

voluminous that there could be no reasonable likelihood the jury failed to consider it.

The State argues the district court's finding of an Eighth Amendment violation is contrary to *Boyde v. California*, 494 U.S. 370 (1990), and *Buchanan v. Angelone*, 522 U.S. 269 (1998). Rather, it maintains there is no reasonable likelihood the jury applied the instructions in a way that prevented consideration of constitutionally relevant mitigating evidence. The State points to instructions permitting the jury to select life imprisonment, even upon a finding of aggravating circumstances; authorizing the jury to consider imposing a death sentence only upon a unanimous finding of one or more aggravators; defining mitigating circumstances as "those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame," O.R. vol. II at 575; and informing the jury it must decide what circumstances are mitigating under the facts and circumstances of the case. Also, the State suggests the jury received indirect instruction to consider all of the evidence in reaching its decision. *See id.* at 573 (Instruction No. 3: "If, upon consideration of all the evidence, facts, and circumstances in the case, you entertain a reasonable doubt of the guilt of the defendant of the charges made against him in the Bill of Particulars, you must give him the benefit of that doubt and return a sentence of life imprisonment."), 577 (instructing jury to consider all appropriate first-stage

instructions, which required jury to consider all evidence before making guilt decision).  Additionally, the State suggests the context of the proceedings, along with the mitigation evidence and Rojem's counsel's closing argument that Rojem should receive a life sentence, led the jury to consider Rojem's background and character in making its sentencing decision.

"The Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." *Boyde*, 494 U.S. at 377-78.  The standard for determining whether the jury instructions, which must be viewed in total, *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973), satisfy these principles is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence," *Boyde*, 494 U.S. at 380; *see also Buchanan*, 522 U.S. at 276.  A state, however, need not structure in a particular way the manner in which juries consider mitigating evidence.  *Buchanan*, 522 U.S. at 276.

The instructions here only expressly directed the jury to base its sentencing decision on all of the evidence when considering whether the aggravators listed in the Bill of Particulars had been proven.  *Cf. id.* at 277 (instructing jurors to consider all evidence gave them opportunity to consider mitigating evidence).  No instructions required the jury in this case to consider the mitigating evidence.  Nor did the entire context in which the trial court gave the instructions expressly

inform the jury to consider mitigating evidence. *See id.* at 278; *Boyde*, 494 U.S. at 383. We agree with the language in *Boyde*, 494 U.S. at 384, that counsel's argument to spare Rojem's life probably carried less weight with the jury than the court's instructions. In addition, the defense did not present extensive mitigating evidence. *Cf. Buchanan*, 522 U.S. at 278 (two days of mitigation testimony); *Boyde*, 494 U.S. at 383 (four days of mitigation testimony). And even the presentation of that evidence did not guarantee the "jury w[ould] feel entitled to consider" it. *Boyde*, 494 U.S. at 384. Rather, the jury must have a means to consider and give effect to the mitigating evidence. *See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989).

The trial court did not provide clear, objective standards providing specific, detailed guidance to the jury to decide whether to impose the death penalty. *See Godfrey v. Georgia*, 446 U.S. 420, 428 (1980) (citing cases). And a weighing requirement was not inherent in the given instructions. Thus, the jury could have based its decision to impose the death penalty on caprice or emotion, rather than on reason. *Zant v. Stephens*, 462 U.S. 862, 885 (1983) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)). We therefore conclude there is a reasonable likelihood the jury applied the instructions in a way that prevented it from considering the mitigating evidence. This violated the Eighth Amendment.

With respect to the district court's finding of a Fourteenth Amendment violation, the State argues Rojem received all the process he was due, despite the absence of the weighing instruction, because the jury knew it must consider all of the evidence in determining punishment and the jury was instructed that it must decide whether to sentence Rojem to life or death. [4] "The defendant . . . has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (citation omitted); *see also Williams v. Cain*, 125 F.3d 269, 281, 284 (5th Cir. 1997) (holding capital defendant has constitutionally protected liberty interest in having his sentence imposed by jury instructed to act within bounds of its statutory discretion).

Oklahoma requires weighing by the fact finder, in this case the jury. *See* Okla. Stat. tit. 21, § 701.11; *Rojem*, 753 P.2d at 369. Thus, the trial court deprived Rojem of his legitimate expectation under state law–he did not receive

---

[4] The State argues any error in failing to provide the weighing instruction was harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 627, 637 (1993). We will not review for harmless error. *Cf. Mills v. Maryland*, 486 U.S. 367, 375-77 384 (1988) (requiring resentencing if jury's verdict was based on improper ground or "jury conducted its task improperly," such as failing to consider mitigating evidence).

the assurance the death penalty would be imposed only if the aggravating circumstances outweighed the mitigating circumstances. *See Hicks*, 447 U.S. at 346. Instead, the trial court permitted the jury unguided discretion to impose the death penalty. Nor did the state appellate court attempt to cure the deprivation. See *id.* at 347. The State therefore deprived Rojem of his liberty without due process.

We conclude the Oklahoma appellate court's decision was contrary to and an unreasonable application of Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1), and the federal district court correctly held Rojem's Eighth and Fourteenth Amendment rights were violated.

**APPEAL NO. 00-6060**

**I.  Denial of an Evidentiary Hearing**

Rojem argues he should have received an evidentiary hearing due to newly discovered evidence and allegations of ineffective assistance of counsel. [5] "His attempt to develop the factual basis of these claims in state court frees him from the limitations of 28 U.S.C. § 2254(e)(2)." *Walker v. Gibson*, 228 F.3d 1217, 1231 (10th Cir. 2000). Rojem, therefore, "is entitled to an evidentiary hearing if

_____

[5]     The State argues no certificate of appealability (COA) was granted on this claim and it therefore is not properly before this court. Rojem, however, received a COA on the merits claims, and he did request an evidentiary hearing with respect to those claims. Thus, we are not prohibited from considering this claim.

his allegations, if true and not contravened by the record, entitle him to habeas relief." *Id.* (quotation omitted). Based on the following discussion, we conclude Rojem is not entitled to an evidentiary hearing.

## II. Denial of Funds for Investigative and Expert Assistance

Rojem argues the state courts and federal district court violated his constitutional rights, including his right to effective assistance of counsel, by denying him funds for investigative and expert assistance. He believes having an investigator to pursue potential suspects and new evidence *may* prove someone else committed the crime. Although the federal district court granted broad discovery, Rojem contends this had limited value without assistance.

On direct appeal, the Oklahoma Court of Criminal Appeals in part concluded the trial court properly denied funds because (1) Rojem made undeveloped assertions, insufficient to qualify for funds, *Caldwell v. Mississippi*, 472 U.S. 320, 323-24 n.1 (1985); (2) counsel cross-examined state experts and elicited the limitations of the tests and examinations performed and (3) the State need not provide an indigent defendant with an investigator simply because a wealthier defendant could afford one. *Rojem*, 753 P.2d at 364. On review of the denial of Rojem's first post-conviction application, the court found any lack-of-funds argument unpersuasive, because Rojem did not assert newly discovered evidence and the constitutional issues he raised did not require expert

-13-

witnesses to examine evidence. *Rojem*, 829 P.2d at 684. Also, because experts were unnecessary and irrelevant, the court did not analyze counsel's effectiveness. *Id.* In reviewing denial of the second post-conviction application, the court again refused to consider a funding issue, given the limited value of Rojem's newly discovered evidence. [6] *Rojem*, 925 P.2d at 76.

A state must provide an indigent defendant with the basic tools to present an adequate defense or appeal. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). We consider three factors to determine what tools are required:

> (1) the effect on [Rojem's] private interest in the accuracy of the trial if the requested service is not provided; (2) the burden on the government's interest if the service is provided; and (3) the probable value of the additional service and the risk of error in the proceeding if such assistance is not offered.

*Moore v. Reynolds*, 153 F.3d 1086, 1112 (10th Cir. 1998) (quotation omitted). The third factor is the critical factor, *Johnson v. Gibson*, 169 F.3d 1239, 1246-47 (10th Cir. 1999), and it is dispositive in this case.

Rojem's requests for experts and an investigator were speculative, merely suggesting, without more, that such assistance would have been beneficial. *Rogers v. Gibson*, 173 F.3d 1278, 1287 (10th Cir. 1999), *cert. denied*, 528 U.S. 1120 (2000). He has not shown the value of the requested services or how their denial caused him substantial prejudice. *See Johnson*, 169 F.3d at 1247. And

---

[6] This newly discovered evidence is discussed *infra* in section III.

counsel was not rendered ineffective. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring petitioner to show counsel's performance was deficient and he was prejudiced thereby). Accordingly, we conclude the Oklahoma appellate court's determinations were not unreasonable. *See* 28 U.S.C. § 2254(d)(1).

In federal district court, Rojem was entitled to experts and an investigator only upon a showing of reasonable necessity. *See* 21 U.S.C. § 848 (q)(4)(B), (q)(9); *McFarland v. Scott*, 512 U.S. 849, 855 (1994). Because Rojem did not show necessity, the district court did not abuse its discretion in denying funding for an investigator or experts. *See, e.g.*, *Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *petition for cert. filed*, (U.S. Aug. 28, 2000) (No. 00-5947); *Bonin v. Calderon*, 59 F.3d 815, 837 (9th Cir. 1995).

## III. *Brady* Violation

Rojem argues the State withheld exculpatory, material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and thereby interfered with his right to effective assistance of counsel. First, Rojem contends the State failed to disclose evidence of alleged suspects and an expert witness. He also contends the federal

district court incorrectly found that newly discovered evidence, the Delp Report, was not material. [7]

To prove a *Brady* violation, a petitioner must establish that the State suppressed exculpatory, material evidence. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material if there is a reasonable probability that, had the State disclosed the evidence, the result of the trial would have been different. *Id.* at 280. In assessing materiality, this court reviews the undisclosed evidence in light of the record as a whole. *Moore*, 153 F.3d at 1112.

## A. Evidence Considered by State Courts

After finding undisclosed evidence, Rojem filed a second post-conviction application based on this newly discovered evidence. The Oklahoma Court of Criminal Appeals concluded the newly discovered evidence of alleged suspects Carl Bounds and Bobby Schoonover was not exculpatory and material and did not undermine confidence in the outcome of the trial. *Rojem*, 925 P.2d at 73-75. The court further concluded Rojem knew or should have known about the expert witness and Donald Cummings' investigation of other alleged suspects at the time Rojem filed his first application for post-conviction relief; therefore, the court

---

[7] The State has waived an exhaustion defense with respect to the Delp Report. *See* 28 U.S.C. § 2254(b)(3). The federal district court denied any claim based on this Report on its merits. *See* 28 U.S.C. § 2254(b)(2).

refused to review these claims based on waiver and issue preclusion. *Id.* at 75-76. The court also rejected a claim of ineffective assistance of counsel resulting from undisclosed evidence. *Id.* at 76.

We review the state court's materiality determination under § 2254(d)(1). *Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 2206 (2000). Upon review of the entire record, we conclude the state appellate court's rejection of the *Brady* claim with respect to Bounds and Schoonover was not an unreasonable application of Supreme Court precedent. No record evidence indicates the State considered these two suspects.

Rojem recognizes the remainder of this claim is procedurally barred. But we cannot determine if the State is arguing procedural bar. Regardless of whether this portion of the claim is barred, we conclude, as did the district court, that the State did not withhold exculpatory, material evidence.

## B. Delp Report

Rojem found the Delp Report after the federal district court granted discovery. The Report indicated that between 2:55 a.m. and 3:25 a.m., when Rojem allegedly was at home, Lawana Delp saw headlights of a vehicle she could not identify by make or model one-third mile from the Delp home in the field where Layla's body was later found. The car was still there at 3:25 a.m. when she

-17-

went to bed. Her husband stated that the road was used as a shortcut by people coming and going from the bars.

The federal district court agreed with Rojem that the State should have given him this Report because it had exculpatory value. Nonetheless, the court determined the Report was not material because there was no reasonable probability disclosure would have resulted in a different outcome at trial.

Reviewing *de novo*, *see LaFevers*, 182 F.3d at 711, we agree. Even if someone was near the crime scene at the time noted, the Report does not preclude Rojem as a suspect or even strongly suggest someone other than Rojem committed the crime. Other than the timing and location of the headlights, Rojem presented no evidence connecting the vehicle to the murder.

In light of the Delp Report, Rojem argues counsel should have known to investigate Schoonover and Bounds as potential suspects. No evidence connects either one with the crime, however. In contrast, the evidence presented at trial pointed to Rojem as the killer. Further, the possibility counsel could have investigated other alleged suspects does not establish a reasonable probability the trial's outcome would have been different.

Considering the undisclosed evidence collectively, the State did not fail to disclose material evidence. *See Johnson*, 169 F.3d at 1255 (citing *Kyles v. Whitley*, 514 U.S. 419, 436-37, 438-39 (1995)). We therefore conclude there is

-18-

no reasonable probability the trial result would have been different if all of this evidence had been disclosed before trial. Rojem had a fair trial resulting in a verdict worthy of confidence. *See Kyles*, 514 U.S. at 434. And the alleged *Brady* violation did not render his counsel constitutionally ineffective. [8]

## IV. Sufficiency of the Evidence to Prove Guilt Beyond a Reasonable Doubt

Rojem argues there is insufficient evidence to prove him guilty beyond a reasonable doubt of murder or rape. In assessing sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### A. Murder

Rojem challenged the sufficiency of the evidence to support the murder conviction in his first application for post-conviction relief. The Oklahoma Court of Criminal Appeals determined Rojem waived the claim. *Rojem*, 829 P.2d at 684. The federal district court found this claim procedurally barred because Rojem did not argue either cause and prejudice or a fundamental miscarriage of

---

[8] Rojem also argues the failure to disclose evidence denied him his Sixth and Fourteenth Amendment rights to confront and cross-examine witnesses. This argument is so inadequately developed on appeal that we deem it waived. *See Thomas v. Gibson*, 218 F.3d 1213, 1220 n.4 (10th Cir. 2000).

justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner" can satisfy either cause and prejudice standard or fundamental miscarriage of justice standard). Relying on the newly discovered evidence, Rojem argues on appeal, for the first time, that procedural default would result in a fundamental miscarriage of justice. We will not consider this argument. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir.) (holding this court does not consider arguments raised for first time on appeal), *cert. denied*, 121 S. Ct. 496 (2000). Accordingly, we conclude this claim is procedurally barred.

Even if it were not barred, we agree with the federal district court that sufficient evidence presented at trial supported the murder conviction.[9] *See Herrera v. Collins*, 506 U.S. 390, 402 (1993) (holding newly discovered evidence should not be considered). While there often are some unresolved questions in a case based on circumstantial evidence, here, much evidence, viewed in the light most favorable to the State, clearly points to Rojem as the murderer.

---

[9]     Even if we were to consider the newly discovered evidence, we would conclude sufficient evidence supported the murder conviction.

**B. Rape**

Rojem argues there is insufficient evidence of penetration to support the rape conviction. On direct appeal, the Oklahoma Court of Criminal Appeals determined there was sufficient evidence of penetration:

> Oklahoma law provides that rape requires actual penetration, but that any sexual penetration, however slight, is sufficient to complete the crime of rape. In the present case, the medical examiner testified that the dead child's hymen, labia minor, labia major and vaginal wall were bruised. It was Dr. Choi's opinion that the bruising resulted from a blunt force trauma to the hymen consistent with being caused by a male penis. She further stated the injuries were inflicted while the victim was yet living.
>
> We find this evidence sufficient to allow any rational trier of fact to find that penetration occurred beyond a reasonable doubt. . . . [M]edical testimony of the bruised and lacerated condition of the victim's hymen and labia minora would sufficiently prove sexual penetration of at least one half inch, it being established that the hymen is located approximately that distance within the vagina. Although the medical examiner herein was unwilling to render an opinion whether "penetration in the legal sense" occurred, there was adequate testimony from which the jury could deduce that it had in fact occurred.

*Rojem*, 753 P.2d at 362-63 (citations omitted). Recognizing the state court correctly articulated and applied the *Jackson* standard, we conclude, after reviewing the record, the state court's determination was reasonable. *See* 28 U.S.C. § 2254(d); *see also Valdez v. Ward*, 219 F.3d 1222, 1237 (10th Cir. 2000) (declining to decide whether § 2254(d)(1) or (d)(2) applies), *petition for cert. filed*, (U.S. Feb. 7, 2001) (No. 00-8528).

## V. Prosecutorial Misconduct

Rojem argues prosecutorial misconduct denied him a fair trial.

### A. First Stage

**1. Opening Statement.** Rojem challenges various prosecutorial opening statement remarks. On post-conviction review, the Oklahoma Court of Criminal Appeals found the claim waived. *Rojem*, 829 P.2d at 684. And the federal district court found it procedurally barred. We agree. We do not consider Rojem's assertion made for the first time on appeal that counsel was ineffective for failing to object to the comments. *See Jones*, 206 F.3d at 958.

**2. Closing Statement.** Rojem argues the prosecutor (1) expressed his opinion that Rojem was guilty, the State had met its burden of proof, Layla had been killed in the field, it was an insult to the jury's intelligence to suggest Layla was killed elsewhere and Rojem was less than human; (2) attacked defense counsel; (3) suggested the defense had labeled the prosecutor, Oklahoma State Bureau of Investigation (OSBI) and sheriff's office liars; (4) vouched for Jason's and an OSBI agent's credibility and (5) went outside the record to speculate what Rojem said to Layla when he abducted her. Rojem challenged these remarks in his first application for post-conviction relief. The Oklahoma Court of Criminal Appeals deemed these challenges waived. *Rojem*, 829 P.2d at 684. The federal district court, however, reviewed each remark on its merits because the State did

not assert procedural bar. The State now asks this court to *sua sponte* apply procedural bar. *See Hardiman v. Reynolds*, 971 F.2d 500, 504 (10th Cir. 1992). We decline to do so, and review *de novo* the district court's conclusion that the remarks did not render the trial fundamentally unfair, *see LaFevers*, 182 F.3d at 711.

When, as here, prosecutorial misconduct does not implicate a constitutional right, such misconduct does not warrant habeas relief unless it rendered the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974); *Paxton v. Ward*, 199 F.3d 1197, 1217 (10th Cir. 1999). In reviewing this claim, we assess the prosecutor's conduct in context, considering the strength of the State's case and determining whether the prosecutor's challenged remarks "plausibly could have tipped the scales in favor of the prosecution." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir.) (quotation omitted), *cert. denied*, 121 S. Ct. 664 (2000). Ultimately, we consider the probable effect the prosecutor's remarks had on the jury's ability to judge the evidence fairly. *Id.* After reviewing the transcript, we are unable to conclude any of the challenged comments, even if improper, influenced the jury's decision and rendered the trial fundamentally unfair.

**B. Second Stage**

Rojem argues the prosecutor engaged in name calling and attempted to invoke a regional bias. Although this claim was never raised in state court, the State does not argue failure to exhaust or procedural bar. Accordingly, we proceed to the merits. *Moore*, 195 F.3d 1171. In light of the considerable evidence supporting guilt and the aggravating factors, the prosecutor's comments did not influence the jury's verdict. *Smallwood v. Gibson*, 191 F.3d 1257, 1275-76 (10th Cir. 1999), *cert. denied*, 121 S. Ct. 88 (2000).

**C. Evidentiary Misconduct**

Rojem challenges the prosecutor's attempt to impugn his character by telling the jury he was not a Christian and by eliciting testimony about his sexual practices. The Oklahoma Court of Criminal Appeals found no fundamental error. *Rojem*, 753 P.2d at 366. This determination was reasonable. *See* 28 U.S.C. § 2254(d)(1).

Rojem argues the prosecutor misled the jury by (1) having Sheriff Ferraro testify about blood in the trunk of Rojem's car; (2) stating the time of death could not be estimated and (3) implying Layla had been found with panties in her mouth. The prosecutor did not mislead the jury. Rojem's counsel questioned Sheriff Ferraro about the blood; the exact time of death cannot be established and one witness testified it appeared panties were stuffed into Layla's mouth.

Rojem argues the prosecutor improperly presented evidence of extramarital affairs and illegal drug use. The Oklahoma Court of Criminal Appeals determined this evidence did not affect the outcome at trial. *Rojem*, 753 P.2d at 366. This determination was reasonable. *See* 28 U.S.C. §2254(d)(1).

**CONCLUSION**

We have considered all of Rojem's guilt stage arguments and are not persuaded constitutional error affected that stage of his trial. Also, we agree with the federal district court that the trial court violated Rojem's constitutional rights by failing to give the weighing instruction. Accordingly, we AFFIRM the district court's decision.