BACHARACH, Circuit Judge,
dissenting.
I agree with the majority that (1) Mr. Williams’ motion, which alleged fraud on the court, constituted an unauthorized second-or-suceessive motion, (2) the district court would have lacked jurisdiction to grant this motion, and (3) the district court had the power to sua sponte raise fraud on the court. But I respectfully disagree with the majority in two respects:
1. Calderon v. Thompson does not affect our determination of whether the district court was acting sua sponte.
2. The district court invoked fraud on the court sua sponte.
Because the district court invoked fraud on the court sua sponte and had the power to do so, I would affirm. Accordingly, I respectfully dissent.
I. Power to Invoke Fraud on the Court Sua Sponte
The judiciary can vacate a judgment sua sponte when it was obtained through a fraud on the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244-45, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), overruled on other grounds by Standard Oil Co. of Cal. v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). This fraud goes beyond- an injury to a party because it injures the “integrity of the judicial process.” Id. at 246, 64 S.Ct. 997. Thus, the fraud-on-the-court power does not depend on the filing of a motion and “the court may assert this power sua sponte.” United States v. Buck, 281 F.3d 1336, 1341-42 (10th Cir.2002); see Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (“[A] *1083 court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.”); see also Government’s Reply Br. at 6 (acknowledging that a court can invoke fraud on the court sua sponte “to protect itself’).
In certain contexts, the courts’ ability to act sua sponte may be .affected by the Antiterrorism and Effective Death Penalty Act’s restrictions on second-or-successive motions to vacate a criminal judgment. 28 U.S.C. § 2255(h) (2012); United States v. Nelson, 465 F.3d 1145, 1148 (10th Cir.2006). Like the majority, I believe the Act would prevent a district court from granting a second-or-successive motion, which relies on fraud on the- court, in the absence of certification by our court. See Maj. Op. at 1072-73. As the majority acknowledges, the Act does not apply when the district court acts sua sponte. Id. at 1070-71. In my view, this acknowledgment requires us to affirm: The district court stated that it was acting sua sponte, and we should take the court at its word.
A. Calderon’s Interpretive Rule
The majority discounts the district court’s characterization based on Calderon v. Thompson, 523 U.S. 538, 553-56, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). Maj. Op. at 1073-75. But Calderon does not address a judge’s sua sponte invocation of fraud on the court.
Calderon involves a circuit court’s ability to recall á mandate sua sponte based on judges’ docketing errors. Calderon v. Thompson, 523 U.S. 538, 547-48, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). In Part III of the opinion, the Supreme Court addresses whether the recall was proper, discussing the issue in three sections:
1.Part III.A analyzes whether the Ninth Circuit (1) acted sua sponte in recalling the mandate or (2) recalled the mandate because of arguments advanced in a second-or-successive petition.
2. Part III.B examines the “significant limits” on federal jurisdiction uover habeas petitions and creates a rule for when circuit courts can sua sponte recall their mandates.
3. Part III.C applies the new rule.
Id. at 553-66, 118 S.Ct. 1489.
The first section contains the rule applied by today’s majority regarding when a court has acted sua sponte. But the second section disclaims any impact on fraud-on-the-court cases.
Calderon’s procedural history helps us understand the first section of the opinion. Mr. Thompson, a state prisoner, filed a habeas petition alleging ineffective assistance of counsel. Id. at 545, 118 S.Ct. 1489. The petition was granted in part. Id. On appeal, a Ninth Circuit panel reversed in part and affirmed in part. Id. at 545-46, 118 S.Ct. 1489.
Mr. Thompson filed a petition for rehearing and a suggestion for rehearing en banc, which was circulated to all active judges. Id. at 546, 118 S.Ct. 1489. The panel issued an order in March 1997, denying the petitions. Id.
In July 1997, Mr. Thompson filed a second motion to recall the mandate, which was based on new evidence. Id. This motion constituted a second-or-successive petition, triggering the Antiterrorism and Effective Death Penalty Act, and the Ninth Circuit denied relief. Id. at 547, 118 S.Ct. 1489.
Two days later, the full court voted to recall its original mandate (issued in March 1997), claiming that it was acting sua sponte rather than in response to the request in July 1997 to recall the mandate. Id. at 547-48, 118 S.Ct. 1489. In deciding to recall the mandate, the court explained that two of the judges failed to request en *1084 banc review because of docketing mistakes. Id. at 548, 118 S.Ct. 1489. The court later considered the merits and decided to grant relief. Id. at 548-49, 118 S.Ct. 1489.
The Supreme Court granted certiorari. The Court’s first step was to determine whether the Ninth Circuit had jurisdiction to recall the mandate. Id. at 553-54, 118 S.Ct. 1489. The Ninth Circuit’s recall of the mandate would have implicated the Antiterrorism and Effective Death Penalty Act if the court’s action had been based on Mr. Thompson’s filing in July 1997. See id. Thus, to determine whether the Act applied, the Supreme Court had to determine whether the Ninth Circuit was truly acting sua sponte:
As a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner’s “application.” This carries implications for cases where a motion to recall the mandate is pending, but the court instead recalls the mandate on its own initiative. Whether these cases are subject to § 2244(b) depends on the underlying basis of the court’s action. If, in recalling the mandate, the court considers new claims or evidence presented in a successive application for habeas relief, it is proper to regard the court’s action as based on that application. In these cases, § 2244(b)(2) applies irrespective of whether the court characterizes the action as sua sponte.
In Thompson’s case, however, the Court of Appeals was specific in reciting that it acted on the exclusive basis of Thompson’s first federal habeas petition. The court’s characterization of its action as sua sponte does not, of course, prove this point; had the court considered claims or evidence presented in Thompson’s later filings, its action would have been based on a successive application, and so would be subject to § 2244(b). But in Thompson’s case the court’s recitation that it acted on the exclusive basis of his first federal petition is not disproved by consideration of matters presented in a later filing. Thus we deem the court to have acted on his first application rather than a successive one.
Id. at 554, 118 S.Ct. 1489.
This passage announces an interpretive rule for determining when a court is truly acting sua sponte in recalling a mandate. In our case, the majority relies on this passage to conclude that the district court did not act sua sponte because it considered claims and evidence presented in Mr. Williams’ ' second-or-successive motion. See Maj. Op. at 1073-75.
But the reach of the interpretive rule is qualified by the second section of Part III, when the Supreme Court cautioned: ‘We should be clear about the circumstances we address in this case.... This .... is not a case of fraud upon the court, calling into question the very legitimacy of the judgment.” Calderon, 523 U.S. at 557, 118 S.Ct. 1489.
B. Calderon’s Impact on Fraud on the Court
The disclaimer in the second section creates a question about the scope of the rule relied on by the majority. Given the context of the disclaimer, two interpretations are possible.
One interpretation is that the disclaimer applies to the entire case, including the first section’s analysis of whether the Court of Appeals acted sua sponte. If this interpretation is correct, nothing in Calderon should be applied to a fraud-on-the-court case and the Supreme Court’s discussion about when a judge acts sua sponte does not affect our decision.
The second interpretation is that the disclaimer applies only to the rule regarding when an appellate court can recall a mandate sua sponte (the analysis in the *1085 second section). If this interpretation is correct
• the Supreme Court’s reasoning about - when a judge acts sua sponte governs, and
• the district judge did not act sua sponte because he considered evidence and claims raised in Mr. Williams’ second-or-successive motion.
Reasonable minds can differ in interpreting Calderon’s, disclaimer. For two reasons,' however, I believe the Calderon disclaimer applies to the entire case:
1. The Supreme Court’s language (explaining how to determine whether a court is acting sua sponte) explicitly ties the rule to situations where an appellate court is recalling a mandate.
2. The issue presented when a district court claims to invoke fraud on the court sua sponte (the issue here) is meaningfully different from the issue presented when an appellate court claims to recall a mandate sua sponte in the face of two petitions (the issue in Calderon).
For both reasons, I do not believe Calderon’s interpretive rule applies when a court states that it is acting to prevent fraud on the court. Thus, we must take the district court at its word when it said it was acting sua sponte.
1. Specificity of the Supreme Court’s Language
The Supreme Court stressed that it was dealing with recall of the mandate when explaining the test to determine whether the Ninth Circuit was acting sua sponte:
As a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner’s “application.” This carries implications for cases where a motion to recall the mandate is pending, but the court instead recalls the mandate on its own initiative. Whether these cases are subject to § 2244(b) depends on the underlying basis of the court’s action. If, in recalling the mandate, the court considers new claims or evidence presented in a successive application for habeas relief, it is proper to regard the court’s action as based on that application. In these cases, § 2244(b)(2) applies irrespective of whether the court characterizes the action as sua sponte.
Id. at 554, 118 S.Ct. 1489 (emphasis added). Through this language, the Supreme Court took great pains to make clear that the sua sponte action it was testing was recall of a mandate, as opposed to something else. The specificity of this language in the first section, combined with the disclaimer in the second section, suggest that the Supreme Court was limiting its interpretive rule to the recall of a mandate.
2. Distinctions Between the Issue in Calderon and this Case
This limitation is imperative here, for the Supreme Court had powerful reasons to distinguish between (1) all courts’ ability to sua sponte invoke fraud on the court (which is at issue here) and (2) an appellate court’s desire to recall its mandate (which was at issue in Calderon).
The majority points out that when a court is defrauded, the judgment never becomes final. See Maj. Op. at 1071 (stating that courts have historically enjoyed the power to invoke fraud on the court because judgments procured through fraud had never become final); see also Kenner v. Comm’r, 387 F.2d 689, 691 (7th Cir.1968) (“We think ... that it can be reasoned that a decision produced by fraud on the court is not in essence a decision at all, and never becomes final.”). Because the judgment never became final, the court can act through its jurisdiction over the original proceeding. Otherwise, the case would continue in perpetuity.
*1086 In contrast, an appellate court transfers jurisdiction to the district court by issuing a mandate. See In re Sunset Sales, Inc., 195 F.3d 568, 571 (10th Cir.1999). Accordingly, when a court recalls its mandate sua sponte, it impinges on the finality of. the judgment and its relationship to another court in a way that is absent when a court merely invokes its fraud-on-the-court power sua sponte to continue proceedings that had never terminated.
This difference accounts for the Supreme Court’s effort to determine whether the Ninth Circuit was acting on the first habeas petition or the second habeas petition. The determination took on importance under the Antiterrorism and Effective Death Penalty Act because the first round of habeas proceedings had already terminated.
Here, we are attempting to determine whether the district court was acting in the original criminal case or the sixth round of federal post-conviction proceedings. As the majority acknowledges, if the original criminal .proceedings had been tainted by a fraud on the court, those proceedings were never terminated. See Maj. Op. at 1071 (stating that when there is a fraud on the court, the judgment never became final). Surely the district court had the power to determine whether the original criminal case had ever ended.
Because a fraud on the court prevents termination of the tainted proceedings, no court has ever applied the statutory provisions governing second-or-successive petitions to a judge’s power to remedy a fraud on the court. See Gonzalez v. Sec’y for Dep’t of Corrs., 366 F.3d 1253, 1275 (11th Cir.2004) (stating that in Calderon, the Supreme Court recognized that a mandate in a habeas case can be recalled when there was a fraud on the court, creating a question about the legitimacy of the judgment); see also Douglas v. Workman, 560 F.3d 1156, 1193-94 (10th Cir.2009) (noting that the Antiterrorism and Effective Death Penalty Act is designed to protect against judicial abuse by the petitioner, not the State’s perpetration of a fraud on The court).
In my view, Congress has given little indication of an intent to restrict the established power of a court to act sua sponte to address fraud on the court. In the absence of congressional repeal of this power, a district court continues to enjoy the necessary power to address fraud on itself — regardless of whether the petitioner files a second-or-successive motion to vacate the judgment.
II. The District Court’s Characterization of its Action
Having concluded that a court may invoke fraud on the court sua sponte even after the filing of a motion, the resulting issue is whether , the district court exercised that power. The majority acknowledges that the district court said it was acting sua sponte. Maj. Op. at 1075 (“Here, the district court claimed it acted sua sponte to correct a fraud on the court.”). I would abide by the district court’s characterization of its action.
Mr. Williams pleaded guilty to federal criminal charges and filed multiple post-conviction motions. His sixth motion, styled as a motion to withdraw and nullify his guilty plea, led to the district court’s concern about a fraud on the court. Ultimately, however, the court invoked its fraud-on-the-court power sua sponte rather than in response to Mr. Williams’ motion.
Initially, the district court did not believe Mr. Williams’ motion would be considered second-or-successive based on his allegations of a fraud on the court. See Appellant’s App., vol. II, at 359 (“[B]e-cause Defendant seeks relief based on a fraud upon the court claim, it is distinct *1087 from a habeas petition and is not governed by [the Antiterrorism and Effective Death Penalty Act].’’). As a result, the court allowed the case to proceed. But during the proceedings, the court changed its approach based on a newly issued opinion in our court: United States v. Baker, 718 F.3d 1204 (10th Cir.2013). There we held that “a motion alleging fraud on the court in a defendant’s criminal proceeding must be considered a second-or-successive collateral attack because it asserts or reasserts a challenge to the defendant’s underlying conviction.” Baker, 718 F.3d at 1207. The district court correctly interpreted Baker to foreclose consideration of Mr. Williams’ motion unless we were to authorize a second-or-successive motion under § 2255. Appellant’s App., vol. II, at 383 n. 5.
Instead of continuing with the approach now forbidden by Baker, the district court initiated consideration of the issue under its authority to invoke fraud .on the court sua sponte. In doing so, the district court distinguished its order from the one in Baker, stating in footnote five: “The instant case is distinguishable due to the fact it is the Court, not the defendant, that has invoked its inherent authority and has construed Williams’ Motion to Withdraw and Nullify Guilty Plea as a fraud on the court motion.” Id.[1]
Nothing in the district court’s analysis is inconsistent with a sua sponte invocation of fraud on the court. Thus, I would conclude that the court invoked fraud on the court sua sponte, as it had the authority to do.
III. Merits
As the majority notes, the government waived arguments regarding the district court’s application of fraud on the court by failing to raise these arguments until the reply brief. Maj. Op. at 1070 n. 9; see Wheeler v. Comm’r, 521 F.3d 1289, 1291 (10th Cir.2008) (“[IJssues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived.”).[2] Because I would reject the government’s jurisdictional arguments, I would end the analysis there and affirm.
IV. Conclusion
We have long recognized the ability of a court to vacate a judgment procured through a fraud. The district court in *1088 voked that power, as it was empowered to do.
We need not decide whether the court correctly perceived the government’s conduct as fraudulent because the government waived its arguments on the merits. Instead, the government appealed solely on a jurisdictional ground.-
Though the district judge lacked jurisdiction to grant relief based on Mr. Williams’ motion, that is not what happened. To the contrary, the district judge exercised his inherent power to sua sponte remedy a fraud on his own court. Accordingly, I would affirm. Because the majority has declined to do so, I respectfully dissent.

. The government questions the validity of this distinction, arguing that the relief being sought (vacatur of the conviction) is the same regardless of whether this remedy is being requested by Mr. Williams or the district court. Appellant's Opening Br. at 40. This distinction is dubious and immaterial. It is dubious because courts do not request Velief; they decide whether to grant relief. The distinction is immaterial because Baker did not address whether a court could invoke fraud on the court sua sponte after a party files a second-or-successive petition. The majority agrees. See Maj. Op. at 1073 (“Mr. Williams' is correct that [the Antiterrorism and Effective Death Penalty Act] will not constrain a court’s authority to employ its inherent equitable powers if the court is acting on its own initiative, rather than upon the application filed by the petitioner.”).

. In its opening brief, the government refers to the merits in three sentences:
Whether or not there was police misconduct during the investigation, there was no fraud on the district court during the proceedings that led to Williams’ convictions. His convictions rested solely on his detailed written and oral admissions of his factual guilt. The district court’s fraud-on-the-court ruling is wrong on the merits.
Appellant's Opening Br. at 34. These three sentences, lacking any explanation or authority, do not constitute adequate development of an argument on the merits. See Rojem v. Gibson, 245 F.3d 1130, 1141 n. 8 (10th Cir.2001) (stating that an argument was waived in a habeas appeal because it was inadequately developed). In oral argument, the government conceded that its opening brief had not addressed the merits. Oral Arg. 7:52-8:37.